**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (Bar No. 236165)
mmao@bsfllp.com
Joshua Michelangelo Stein (Bar No. 298856)
jstein@bsfllp.com
Jake A. Glendenning, (Bar No. 345463)
jglendenning@bsfllp.com
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899

Amy Ren[1]
aren@bsfllp.com
55 Hudson Yards,
New York, NY 10001

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID L. GREENE<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, and ALPHABET INC.,<br><br>Defendants. | Case No. 3:26-cv-01773-CRB<br><br>**PLAINTIFF DAVID L. GREENE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:        June 12, 2026<br>Time:        10:00 a.m.<br>Dept:        Courtroom 6 – 17th Floor<br>Judge:      Hon. Charles R. Breyer<br><br>Complaint Filed:        January 23, 2026<br><br>Action Removed:        March 2, 2026<br><br>**DEMAND FOR JURY TRIAL** |

_____

[1] Not admitted in California. Motion for admission *pro hac vice* forthcoming if this action remains in federal court.

**TABLE OF CONTENTS**

I.	INTRODUCTION ........................................................................................................ 1

II.	BACKGROUND ........................................................................................................ 1

III.	LEGAL STANDARD ................................................................................................ 2

IV.	ARGUMENT ............................................................................................................. 3

    A.	Mr. Greene's Claims Are Not Preempted .................................................... 3

        Mr. Greene's claims do not fall within the subject matter of copyright. .......... 4

        Mr. Greene's asserted rights are not equivalent to copyrights ......................... 6

    B.	Mr. Greene Pleads Plausible Claims ............................................................ 8

        Mr. Greene sufficiently pleads section 3344 claims. ...................................... 8

        Mr. Greene sufficiently pleads common law publicity claims. ..................... 10

        Mr. Greene sufficiently pleads Unfair Competition Law claims .................... 12

        Mr. Green sufficiently pleads unjust enrichment/quasi contract claims. ........ 13

        Alphabet Inc. is a proper defendant. ............................................................. 15

V.	CONCLUSION ........................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 ................................................................................................................. 3

*AJ Mgmt. Consulting, LLC v. MBC FZ-LLC*,
    2014 WL 2878891 (N.D. Cal. June 24, 2014) ...................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 3

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ..................................................................................... 13, 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 3

*Best Carpet Values, Inc. v. Google LLC*,
    90 F.4th 962 (9th Cir. 2024) ............................................................................................ 7

*Bruton v. Gerber Prods. Co.*,
    703 F. App'x 468 (9th Cir. 2017) ................................................................................... 12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .............................................................................................. 12, 13

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (2001) ................................................................................................... 11

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .......................................................................................... 13

*Destefani v. Ubisoft Ent.*,
    2022 WL 649262 (C.D. Cal. Jan. 10, 2022) ................................................................... 10

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ................................................................................... 4, 6, 7

*E & E Co. v. Kam Hing Enters., Inc.*,
    429 F. App'x 632 (9th Cir. 2011) ................................................................................... 13

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) .......................................................................................... 13

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ........................................................................................ 14

*Firoozye v. Earthlink Network*,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) ............................................................................ 2

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ....................................................................................... 4, 5

ii

*Hartford Casualty Ins. Co. v. J.R. Marketing*, L.L.C.,
  353 P.3d 319 (2015) .................................................................................................. 14

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
  761 F.3d 1027 (9th Cir. 2014) ..................................................................................... 3

*Holt v. Facebook, Inc.*,
  240 F. Supp. 3d 1021 (N.D. Cal. 2017) ...................................................................... 12

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ..................................................................................... 3

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ............................................................... 3

*KNB Enters. v. Matthews*,
  78 Cal. App. 4th 362 (2000) .................................................................................... 4, 5

*Laws. v. Sony Music Ent., Inc.*,
  448 F.3d 1134 (9th Cir. 2006) ............................................................................ 6, 7, 8

*Lehrman v. Lovo, Inc.*,
  790 F. Supp. 3d 348 (S.D.N.Y. 2025) ......................................................................... 9

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ..................................................................................... 3

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ............................................................................ 4, 6, 7

*Martinez v. ZoomInfo Techs. Inc.*,
  2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ........................................................ 11

*Midler v. Ford Motor Co.*,
  849 F.2d 460 (9th Cir. 1988) ......................................................................... 5, 7, 8, 9

*Munoz v. MacMillan*,
  124 Cal. Rptr. 3d 664 (2011) ..................................................................................... 14

*No Doubt v. Activision Publ'g, Inc.*,
  702 F. Supp. 2d 1139 (C.D. Cal. 2010) ....................................................................... 4

*O'Brien v. PopSugar Inc.*,
  2019 WL 462973 (N.D. Cal. Feb. 6, 2019) ............................................................. 4, 6

*Orthopedic Sys., Inc. v. Schlein*,
  202 Cal. App. 4th 529 (2011) ................................................................................ 9, 10

*Penpower Tech. Ltd. v. S.P.C. Tech.*,
  627 F.Supp.2d 1083 ..................................................................................................... 7

*Russell v. Walmart, Inc.*,
  680 F. Supp. 3d 1130 (N.D. Cal. 2023) ..................................................................... 14

*Steel Co. v. Citizens for a Better Environ.*,
  523 U.S. 83 (1998) ....................................................................................................... 1

iii

*Suzlon Energy Ltd. v. Microsoft Corp.*,
    671 F.3d 726 (9th Cir. 2011) .................................................................................... 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .................................................................................................. 15

*Waits v. Frito–Lay, Inc.*,
    978 F.2d 1093 (9th Cir.1992) ............................................................................. 8, 11

*Woods v. U.S. Bank N.A.*,
    831 F.3d 1159 (9th Cir. 2016) ................................................................................. 3

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ......................................................................... 3, 8, 10

*Xerox Corp. v. Apple Computer, Inc.*,
    734 F.Supp. 1542 ..................................................................................................... 7

**<u>Statutes</u>**

Cal. Civ. Code § 3344 ............................................................................................. 5, 9

Fed. R. Civ. P. 12 ........................................................................................................ 2

**<u>Treatises</u>**

1 Nimmer on Copyright § 1.01 (1999) ........................................................................ 7

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Court should grant David Greene's pending Motion to Remand and deny Defendants' Motion to Dismiss (Dkt. 21, hereafter "MTD") as moot. The Court lacks subject matter jurisdiction over the entire case, including because no copyright claim is sought. *See* Dkt. 23 ("Motion to Remand"); *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998) ("Without [subject-matter] jurisdiction the court cannot proceed at all in any cause.").

In any event, Defendants' motion largely advances the same preemption arguments as Defendants' Notice of Removal. *See* Dkt. 1. For the reasons outlined in Mr. Greene's Motion to Remand, his claims are not preempted. *See* Dkt. 23. The Complaint alleges misappropriation of Mr. Greene's "voice and/or likeness on and in direct connection with the launch of *NotebookLM*." Dkt. 1-3 ("Complaint") at Ct. I ¶ 2. Whether Defendants used Mr. Greene's actual voice as recorded, used some other method to recreate the voice, likeness, and persona, or did both, is of no moment—the allegations are sufficient for all claims asserted.

This is not a copyright case, and no copyright claim is asserted. California's longstanding publicity rights are also not preempted by copyright simply because Defendants apparently used copyrightable sources in order to misappropriate Mr. Greene's publicity rights. Defendants cite to no case suggesting that one's voice and persona may be copyrighted, or that Congress intended to preempt a person's control over their own identity. Defendants' preemption arguments would repudiate decades of Ninth Circuit precedent. Worse still, it would write California publicity rights out of existence in the absence of legal precedent, while giving corporations an end-run around important personal rights protections.

As for the remainder of Defendants' motion: Defendants omit several passages from the Complaint and cast it as "conclusory" and "bare." *See, e.g.*, MTD at 6, 9-12. The Court should review what the Complaint actually alleges, so that the motion may be denied.

## II.   BACKGROUND

Defendants used Mr. Greene's voice and persona without authorization to develop and refine its AI generative product, *NotebookLM*, and deliberately engineered the product to

1

misappropriate his identity. "Google sought to replicate Mr. Greene's distinctive voice—a voice made iconic over decades of decorated radio and public commentary—to create synthetic audio products that mimic his delivery, cadence, and persona." Complaint ¶ 3. Defendants' conduct was not accidental or incidental to the technology, but rather intentional: "regardless of the precise technical means used, Google deliberately made [the AI-host] to sound so substantially similar to Mr. Greene's voice that ordinary listeners reasonably believed the voice to be Mr. Greene's." *Id.* ¶ 65. Indeed, "[t]he voice of the male AI host was (and still is) unquestionably Mr. Greene's voice." *Id.* ¶ 61. And Defendants' conduct caused concrete reputational and economic harm to Mr. Greene, because "as a result of Google's actions, Mr. Greene has suffered economic harm relating to the loss of future licensing opportunities." *Id.* ¶ 69. "This false and irreversible association diminishes the value of Mr. Greene's voice as a licensable asset" and introduces confusion, reputational risk, and market displacement that directly interfere with his ability to monetize his voice in the marketplace. *See id.*

The Complaint pleads four causes of action, each grounded in the unauthorized commercial exploitation of Mr. Greene's identity, voice, persona, and likeness, not any copyrighted work. References to copyrighted source material or "training" only explain *how* and *why* Defendants' outputs sound like Mr. Greene. *Id.* ¶¶ 13, 16. At every stage, the gravamen of Mr. Greene's claims is that Google exploited his actual voice, and his persona and identity, the very attributes that make him recognizable, to drive signups, user engagement, and commercial success for *NotebookLM*. These are classic right-of-publicity allegations: the unauthorized use of a person's identity to promote and sell a product.

## III.    LEGAL STANDARD[2]

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by

---

[2] Notably, Defendants Motion to Dismiss should be rejected as moot if the Court finds that the pending Motion to Remand should be granted. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1119 (N.D. Cal. 2001) (Breyer, J.) ("Because the plaintiff's motion implicates this Court's subject matter jurisdiction, the Court will consider the propriety of removal before evaluating the defendants' [motion to dismiss] arguments.").

lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "[T]he plausibility standard is lower than a probability standard, and there may therefore be more than one plausible interpretation of a defendant's words, gestures, or conduct. Consequently, although an innocuous interpretation of the defendants' conduct may be plausible, that does not mean that the plaintiff's allegation that that conduct was culpable is not also plausible." *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *39 (N.D. Cal. Oct. 2, 2014).[3]

## IV.   ARGUMENT

### A.  Mr. Greene's Claims Are Not Preempted

Defendants argue that Mr. Greene's publicity rights claims, and his claims stemming from the same actions forming his publicity claims, are preempted because they "sound[] in copyright." MTD at 5 (failing to cite a single case in which "sound[ing]" was the standard).[4]

---

[3] Defendants cite *In re Century Aluminum Co. Sec. Litig.*, for the proposition that "'when faced with two possible explanations, only one of which can be true and only one of which results in liability,' plaintiffs must plead "facts tending to exclude the possibility that the alternative explanation is true." MTD at 2, 14 (citing 729 F.3d 1104, 1108 (9th Cir. 2013)). That case does not state a general rule, however, but a context-specific analysis limited to the Securities Act claims at issue in that case. *In re Century Aluminum* holds that the "level of factual specificity needed to satisfy this pleading requirement will vary depending on the context" and that the determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 729 F.3d at 1107 (quoting *Iqbal*, 556 U.S. at 679.).

[4] In footnote 2 of Defendants' MTD, they cite *Mattel, Inc. v. Bryant* for the proposition that Mr. Greene is not entitled to jurisdictional discovery. MTD at 3 n.2. Yet Mr. Greene's counsel informed Defendants on April 15 that *Mattel* appears to be bad law because the Ninth Circuit holds the exact opposite. "[W]hen a defendant asserts that a claim is completely preempted, examination of extra-pleading material is permitted." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1035 (9th Cir. 2014). "This makes doctrinal sense—the complete preemption doctrine is 'an exception . . . to the well-pleaded complaint rule.'" *Id.* (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207). Plaintiffs may raise a "'factual' attack" to challenge "the existence of removal jurisdiction," thereby forcing the defendant to justify its removal by "alleg[ing] the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

The same argument forms the basis for Defendants' Notice of Removal. *See* Dkt. 1. Importantly, if the Court agrees with Mr. Greene that his claims are not preempted, it must remand this case for lack of subject matter jurisdiction because courts use the same test to determine whether subject matter jurisdiction exists under the "complete preemption" doctrine as whether claims are preempted, generally, by the Copyright Act. *See No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1142 (C.D. Cal. 2010); *see also* Motion to Remand at 1–4.

A "publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness . . . ." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017). Mr. Greene alleges several nonconsensual "uses." Defendants used his voice, likeness, and identity to build, train, and refine their *NotebookLM* AI product, as well as in the products outputs that "reach millions." *See, e.g.*, Complaint ¶¶ 1, 3. Because Mr. Greene "allege[s] an unlawful use of [his] likeness[] by Defendants, and further allege[s] the misappropriation of non-[copyrightable] elements of [his] likeness[] and identit[y], [Mr. Greene has] asserted rights that are not equivalent to the rights of copyright holders. Therefore, the subject matter of [Mr. Greene's] right of publicity claim does not fall within the subject matter of the Copyright Act." *O'Brien v. PopSugar Inc.*, 2019 WL 462973, at *3 (N.D. Cal. Feb. 6, 2019) (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004–05 (9th Cir. 2001)).

**<u>Mr. Greene's claims do not fall within the subject matter of copyright.</u>** Defendants argue that Mr. Greene's claims are copyright claims because he alleges Defendants downloaded "*recordings* featuring Greene's voice" and "used those stolen *copies* to develop, train, and refine the *NotebookLM* voice." MTD at 3 (cleaned up, emphasis in MTD). If so, the Complaint would still raise a viable publicity claim, because a "person's name or likeness is not a work of authorship . . . notwithstanding the fact that [a party's] names and likenesses are embodied in a copyrightable" medium. *Downing*, 265 F.3d at 1004. Defendants rely on *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996), which they fail to inform this Court was expressly "limited" by the California Court of Appeal panel "to the unique facts of that case" four years later. *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365, 374 (2000). The Court of Appeal analyzed *Fleet* and held, on facts very similar to this case (but before the advent of generative AI), "that because a

4

---

human likeness is not copyrightable, even if captured in a copyrighted photograph, the [] section 3344 claims against the unauthorized publisher of their photographs are not the equivalent of a copyright infringement claim and are not preempted by federal copyright law." *Id*. at 365, 372 (*Fleet* stands only for the "proposition that performers in a copyrighted film may not use their statutory right of publicity to prevent the exclusive copyright holder from distributing the film."). The Court of Appeal "distinguish[ed]" *Fleet* because it did not involve plaintiffs "asserting a right of publicity claim against the exclusive copyright holder in an effort to halt the authorized distribution of their photographs." *Id*. at 372. The *KNB* plaintiff "assert[ed] the [] statutory right of publicity claim to halt the *un*authorized display of the photographs." *Id*. at 373. Here, like in *KNB*, and unlike *Fleet,* Mr. Greene is not using a publicity rights theory to stop a valid copyright license-holder from exercising its copyrights.

The Complaint contains myriad allegations of misappropriation of non-copyrightable elements of Mr. Greene's voice, likeness, and identity. *See, e.g.*, Complaint ¶ 3 ("Google freely profits from the reputation and personality Mr. Greene built over his lifetime"); ¶ 8 ("Media personalities are typically and consistently paid a negotiated amount for the use of their voices. The negotiated amount is a function of the actor's name, brand value"). Defendants make much of Mr. Greene's failure to allege Defendants used his "name." MTD at 4–5. Yet, alleging use of a name is not required under section 3344 or the common law because section 3344 applies to "name, voice, signature, photograph, *or* likeness, *in any manner*," Cal. Civ. Code § 3344(a)(1) (emphasis added), and common law publicity claims apply to identity. *See Midler v. Ford Motor Co.,* 849 F.2d 460, 462–63 (9th Cir. 1988) (in which Ford did not use Midler's name). Mr. Greene pleads voice claims (*see* Complaint Ct. I) under section 3344, and identity claims under the common law. *Id.* Ct. III.

Mr. Greene's other claims are similarly premised on exploitation of his voice, likeness, and identity. His UCL claim alleges that Defendants "positioned the voices as a feature while omitting material facts about their imitation of Mr. Greene," (*id.* Ct. II ¶ 11) and incorporates allegations that Defendants took advantage of "Mr. Greene's vocal recognizability, and with the intent to confuse, mislead, and capitalize on the commercial value of Mr. Greene's identity

5

and persona." *Id.* ¶ 66. Mr. Greene's allegations do reference training on publicly available data sources, but even if such sources are copyrighted, the basis for his claim is the "imitation of Mr. Greene," and not infringement of any copyrights. *Id.* ¶ 11. The "'use' of a likeness forms the 'basis'" of Mr. Greene's claim, so it "is not preempted," even if "likenesses are embodied in a copyrightable" form. *Maloney*, 853 F.3d at 1012 (citing *Downing*, 265 F.3d at 1000, 1003–04). Further, he does not allege that the copyrights to any recordings were violated, nor sue to stop the exclusive copyright holder from releasing them. *See KNB Enters,* 78 Cal. App. 4th at 372 (publicity rights claims only preempted when a plaintiff sues to prevent an exclusive copyright holder from validly exercising that license). The same applies to Mr. Greene's unjust enrichment claim, which alleges "Defendants received a benefit from Mr. Greene by appropriating and exploiting the commercial value of Mr. Greene's distinctive voice and persona to develop, promote, and sell *NotebookLM* access." Complaint Ct. IV ¶ 2. Because an "integral component of [the] unjust enrichment claim is separate and separable from the unauthorized use of" Mr. Greene's copyrighted content, it "is not preempted by the Copyright Act." *O'Brien*, 2019 WL 462973, at *3 (finding no complete preemption).

**Mr. Greene's asserted rights are not equivalent to copyrights.** The Court only needs to resolve the second prong of the two-part preemption test if it finds that Mr. Greene's claims fall within the subject matter of copyright. *See Laws. v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006). Even if the Court proceeds to this prong, however, it clearly favors Mr. Greene. All of Mr. Greene's asserted rights have "an extra element which changes the nature of the action" to a publicity right action. *See* Motion to Remand at 10–12 (detailing each extra element for each of Mr. Greene's causes of action in the Complaint). The "[extra element] requirement also is not met. Because the subject matter of the . . . statutory and common law right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106." *Downing*, 265 F.3d at 1005. Mr. Greene's allegations are strikingly similar to those at issue in *O'Brien*., which held that claims under publicity rights, unjust enrichment, and the UCL all raised "additional rights" and "extra element[s]." 2019 WL 462973 at *2–4. Defendants argue Mr. Greene "relabels" the exclusive

6

rights under Section 106 as publicity claims. MTD at 6. Not so. The Complaint directly focuses on specific allegations about the use of his voice, image, likeness, and identity. *See* Complaint at ¶¶ 1, 3, 6, 8, 10, 11, 16–20, 21, 35, 40, 42, 50, 51, 52, 54–69, 70–71. These rights are distinct, even when the publicity rights at issue can be captured in copyrightable form. *See Maloney*, 853 F.3d at 1011–12 (claim "is not preempted," even if "likenesses are embodied in a copyrightable" form); *see also Midler,* 849 F.2d at 462 ("A voice is not copyrightable.").

Defendants imply that Mr. Greene asserts derivative work infringement under copyright law by alleging Defendants created "a competing product *derived from [Greene's] works*." MTD at 6 (citing Complaint ¶¶ 68, 72) (emphasis added in MTD). The argument is specious and writes fiction into the Complaint. A "'work' that is the subject matter of the right of publicity is the persona, i.e., the name and likeness of a celebrity or other individual" is different from a "'work of authorship' under the [Copyright] Act." *Downing*, 265 F.3d at 1003 (quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1–23 (1999)). Defendants also argue that Mr. Greene asserts a copyright claim because he mentions "editorial style," "journalistic voice," "creative expression," and "show formats." MTD at 6 (citing ¶¶ 68, 70, 72). None of these—Mr. Greene's actual voice, persona, or speech and style—are copyrighted or even copyrightable.[5]

Defendants also cite *Laws*, which only supports Mr. Greene's arguments. MTD at 7 (citing *Laws*, 448 F.3d at 1141). Importantly, *Laws* holds only that the "commercial purpose"

---

[5] Defendants cite several inapposite software copyright cases that make no mention of publicity rights whatsoever. *AJ Mgmt. Consulting, LLC v. MBC FZ-LLC* deals with unjust enrichment claims regarding unauthorized distribution of a "cloud-enabled digital story telling" application. 2014 WL 2878891, at *1, *6 (N.D. Cal. June 24, 2014). *Xerox Corp. v. Apple Computer, Inc.*, deals with a copyright ownership dispute between Xerox and Apple regarding computer programs. 734 F. Supp. 1542, 1543-44 (N.D. Cal. 1990). There, the UCL claim at issue was preempted because it rested on the same facts as a copyright infringement claim. *Id*. at 1550. The same is true of *Penpower Tech. Ltd. v. S.P.C. Tech.*, in which the UCL claim was based on the same "ownership rights" as its copyright claim. 627 F. Supp. 2d 1083, 1091-92 (N.D. Cal. 2008). Finally, *Best Carpet Values, Inc. v. Google LLC* held that state law claims were preempted by the Copyright Act because "the manner that Plaintiffs' websites are displayed falls within the subject matter of federal copyright law." 90 F.4th 962, 971 (9th Cir. 2024). Importantly, all of these cases found that the software, applications, or websites at issue were the subject matter of copyright. Unlike the plaintiffs in Defendants' cases, Mr. Greene does not allege he was deprived of proceeds from licensing copyrighted (or even copyrightable) works; it was his identity, voice, and likeness, the product of decades of work in the broadcasting industry that belongs to him and that copyright was never designed to protect. Complaint ¶¶ 3, 61, 72.

element of a publicity rights claim was not an "extra element" when the plaintiff "claim[ed], simply, that she objects to having a [music] sample [] used in [a] recording [after she] gave up the right to reproduce her voice." *Id.* at 1144. It helpfully clarifies that "relief from an unauthorized vocal imitation for advertising purposes . . . [is] not the subject of copyright." *Id.* at 1140 (citing *Midler* at 462). Mr. Greene is not suing to prevent distribution of a copyrighted recording that he has licensed to Defendants. Instead, he alleges that Defendants used his *voice* and is exploiting that voice, along with the name, likeness, and identity associated with that voice, for their commercial gain. *See* Complaint ¶¶ 16, 35, 40, 61 ("[t]he voice of the male AI host was (and still is) unquestionably Mr. Greene's voice."), 65, 67. *Laws* also analyzed *Waits,* where the Ninth Circuit "held that the claim was not preempted by copyright law because it was 'for infringement of voice, not for infringement of a copyrightable subject such as sound recording or musical composition.'" 448 F.3d at 1140 (citing *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093 (9th Cir.1992). Defendants' preemption argument fails.

**B.  Mr. Greene Pleads Plausible Claims.**

**Mr. Greene sufficiently pleads section 3344 claims.** First, Defendants argue that Mr. Greene does not allege that Defendants used his "voice," arguing that section 3344 does not apply to "sound-alike[s]." *See* MTD at 8. Mr. Greene's claims are not limited to sound-alikes, however. The Complaint explicitly alleges "[t]he voice of the male AI host was (and still is) unquestionably Mr. Greene's voice" and "that his voice is . . . the default voice option" in *NotebookLM.* Complaint ¶¶ 11, 61. Defendants may argue that these pleadings contradict the pleadings that *NotebookLM* imitates Mr. Green, but they do not. AI can both use his voice, where it "output[s] copies of their training data" (*id.* ¶ 12), and it can generate imitation "outputs closely matching his voice." *Id.* ¶ 40. This Court should decline Defendants' invitation to misread pleadings in a light favorable to Defendants. *See Wyler Summit P'Ship*, 135 F.3d at 661.

Mr. Greene also alleges that Defendants used "recordings" of his voice to explain the origins of *NotebookLM*. *See* Complaint ¶¶ 35, 59–61. Section 3344 protects the use of "another's name, voice, signature, photograph, or likeness, *in any manner* . . . ." Cal. Civ. Code

8

3344(a)(1) (emphasis added). The plain text of the statute therefore supports Mr. Greene's "voice" allegations, that Defendants used his voice to create a digital replica. *See Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 545 (2011) ("In construing section 3344(a), we turn first to the language of the statute, giving the words their ordinary meaning. We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended.") (cleaned up)).[6] Defendants argue that *Midler* held section 3344 did not apply despite a "sound alike" voice actor listening to recordings of Midler to use as reference material. MTD at 8. But here, Defendants "took, copied, or otherwise imitated recordings of Mr. Greene's distinctive, marketable, and widely recognizable voice and used data it obtained from doing so to train its voice model." Complaint ¶ 65. That distinguishes this case for several reasons. First, digital replicas are not the same as human "sound alikes." *See Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 382 (S.D.N.Y. 2025) ("allowing such appropriation by means of AI might be even more pernicious, because, allegedly, a functioning voice clone capable of saying anything, forever, can be created using a small snippet of original audio."). Also, unlike in *Midler*, Mr. Greene alleges the recordings were used for much more than reference material, including training and fine-tuning. Complaint ¶ 12. These other uses fall under the statute's "any manner" language. *See* Cal. Civ. Code § 3344(a)(1). Next, the model contains "memoriz[ed]" voice recordings of Mr. Greene, and may output actual copies of Mr. Greene's voice. Complaint ¶ 12.

Second, Defendants argue that Mr. Greene insufficiently pleads a "direct connection" between the alleged use and a commercial purpose. MTD at 9. They argue that an alleged use must be a substantial factor in driving sales (*see id.*) but the standard is not limited to sales.

---

[6] Defendants argue that the Legislature declined to amend section 3344 to include "digital replicas" in 2025, but its declination to amend the statute may easily indicate that it believes digital replicas are already under the ambit of section 3344. *See Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726 (9th Cir. 2011) ("The fact that Congress did not [add a statutory requirement] indicates that it did not want to impose any additional limitations."). Further, Mr. Greene's reading accords with the Southern District of New York, interpreting New York's version of section 3344. *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 381-82 (S.D.N.Y. 2025) ("[C]onstruing the . . . Law to exclude digital clones would frustrate the statutory purpose, and, for all practical purposes, enable commercial entities to appropriate individuals' identities without restraint.").

Rather, it analyzes whether a plaintiff pleads "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Orthopedic Sys., Inc.*, 202 Cal. App. 4th at 544. In any event, Plaintiff alleges that the *NotebookLM* Greene voice is used to sell "Google One AI Premium tier, which costs $19.99 a month." Complaint ¶ 46. Mr. Greene also alleges that Defendants "leveraged Mr. Greene's voice in order to achieve greater financial success for itself and its partners without compensating him." *Id.* ¶ 54. Those partners include Spotify, which "reported a 40% increase in app engagement" due in part to Mr. Greene's voice. *Id.* Further, "it shall be a question of fact whether or not the use of the person's name, voice, signature, photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required." *Destefani v. Ubisoft Ent.*, 2022 WL 649262, at *7 (C.D. Cal. Jan. 10, 2022) (denying motion to dismiss for lack of "direct connection" under 3344).

**Mr. Greene sufficiently pleads common law publicity claims.** First, Defendants argue Mr. Greene does not plead that his identity is distinctive or widely known. MTD at 10. They ignore his factual allegation that his voice and speech are "distinctive." *See* Complaint ¶¶ 2–3 (describing eight programs on which Mr. Greene appeared, and alleging his "distinctive voice" reached "millions of listeners and have made David Greene one of the most well-known and respected radio and podcasting voices of his time."); *see also id.* ¶¶ 49–51 (describing his awards, accomplishments, and "unique" voice),[7] ¶¶ 62–66 (describing media comparisons to Greene's unique voice), Ct. III ¶ 2. These same allegations support his claim that listeners believed he performed the outputs. In fact, Mr. Greene pleads that *NotebookLM* has caused "actual confusion" among users and cites forensic analysis and public media reports supporting the claim that people believe he is involved. *See Id.* ¶¶ 57–66; Exs. 1–2; *see also* Dkt. 24-1

---

[7] Defendants argue that Mr. Greene calls his own voice "typical," which contradicts his uniqueness allegations. MTD at 10 n.4. The out of context "typical" remark does not contradict his claims that his voice is unique because it describes a "typical NPR explainer" which, because of Mr. Greene's prolificness, is closely associated with his unique and widespread voice. Defendants ask the Court to weigh in on a factual question and construe the facts in their favor, rather than Mr. Greene's, which is improper on a 12(b)(6) motion. *See Wyler Summit P'Ship*, 135 F.3d at 661.

(*Washington Post* article describing people mistaking the *NotebookLM* voice for Mr. Greene).[8] Defendants argue that Mr. Greene's forensic analysis does not indicate sufficient confidence to establish consumer confusion, but ignore the allegation that, according to firm's "proprietary scale, any confidence score that is above 50% is deemed 'relatively high' evidence that the samples originate from the same speaker." Complaint ¶ 59. This confidence score, based on a (-)100% to (+)100% scale (not 0 to 100) is particularly high at this stage, where the Court must draw any inference in Mr. Greene's favor.

Next, Defendants try to reframe factual allegations about Google's benefit as benefits derived from "its technological capabilities" and not from Mr. Greene. MTD at 11. A plain reading of the Complaint reveals otherwise. It alleges that Mr. Greene's voice helped "create familiarity" and "maximize profits" from that familiarity. Complaint ¶ 42. It also alleges Defendants used "Mr. Greene's voice in order to achieve greater financial success for itself and its partners without compensating him." *Id.* ¶ 54; *see also id.* at ¶¶ 46, 53, 55, and Ct. IV ¶ 2.

Finally, Defendants argue that Mr. Greene does not allege "any actual injury, economic or otherwise." MTD at 11-12. But the Complaint alleges facts supporting economic injury from diverted resources and delayed projects (Complaint. ¶¶ 67–68), and from diminished licensing value due to false association. *Id.* ¶ 69. Mr. Greene also alleges injury from competition with AI podcasts. *Id.* ¶¶ 67, 72. Such "a concrete economic injury can exist where there is readily identifiable preexisting value in the misappropriated persona." *Martinez v. ZoomInfo Techs. Inc.*, 2022 WL 1078630, at *3 (W.D. Wash. Apr. 11, 2022), *aff'd*, 82 F.4th 785 (9th Cir. 2023), *reh'g en banc granted, opinion vacated on other grounds*, 90 F.4th 1042 (9th Cir. 2024). This is true because "considerable money, time and energy are needed to develop one's prominence in a particular field . . . to permit an economic return through some medium of commercial promotion." *Id.* (quoting *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 391 (2001)). Here, too, Defendants argue that Mr. Greene failed to plead facts without

---

[8] Defendants cite *Waits* for the argument that Mr. Greene must plead facts that people actually believed *NotebookLM* was his voice. MTD at 10 (citing 978 F.2d at 1101). That case holds, however, that "actual belief" is just one type of evidence to show "actual . . . confusion," which Mr. Greene does adequately allege. *Id.* at 1111; *See* Complaint ¶ 66.

addressing the relevant factual pleadings in the Complaint head on. *See, e.g.,* MTD at 11-12 omitting any mention of Complaint ¶¶ 68-69, or 72.

**<u>Mr. Greene sufficiently pleads Unfair Competition Law claims.</u>** Next, Defendants argue that Mr. Greene lacks UCL standing, but again ignore factual pleadings in the Complaint alleging that Mr. Greene suffered economic harms. MTD at 12. The Complaint alleges injury from competition with AI podcasts (Complaint ¶ 67), and Mr. Greene was forced to divert time, money, and resources away from his projects to investigate and respond to Defendants' unauthorized use of his voice. *Id.* ¶ 68. It alleges that Defendants' conduct created a false, irreversible association between Mr. Greene and *NotebookLM*, diminishing the value of Mr. Greene's voice. *Id.* ¶¶ 69, 72. Even Defendants' cases suggest Mr. Greene's allegations should survive this stage. MTD at 12. *See Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1035 (N.D. Cal. 2017) ("[C]onduct that draws upon the user's cell phone battery frequently or systemically" is "enough to alleged injury under the UCL.").

Under the "unlawful" prong, Defendants argue that Mr. Greene's publicity claims are defective and therefore he cannot show "unlawful" acts sufficient to allege a UCL Claim. MTD at 12-13. For the reasons stated above, he adequately pleads his publicity claims, and therefore, a predicate "unlawful" violation. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 471 (9th Cir. 2017) (predicate violations are "independently actionable under the UCL.").

Under the "unfair" prong, Defendants argue that Mr. Greene fails to sufficiently allege that its acts were anti-competitive. MTD at 13. But Mr. Greene alleges that Defendants are using their power to "directly undermine[] Mr. Greene's ability to enter into future licensing agreements with third parties who might have otherwise sought legitimate licensing of Mr. Greene's voice and likeness" Complaint ¶ 69. In other words, Google's conduct disrupts the market for lawful voice licensing by substituting an uncompensated imitation that undermines Mr. Greene's ability to compete and contract with third parties. This is sufficient to meet California's "undeniably . . . wide standard." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999). "The California Supreme Court" requires only pleadings supporting "any finding of unfairness to *competitors*" or "threatens an incipient violation of an

12

antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) (quoting *Cel-Tech*, 20 Cal. 4th 163, 186-87) (emphasis in original). Mr. Greene adequately pleads that *NotebookLM* damages him as a competitor (Complaint ¶ 69), and that Defendants' actions significantly threaten or harm competition, generally, by creating "a chilling effect on future creative activity by depriving creators of control over their" work. *Id.* ¶ 70.

Under the "fraudulent" prong, Mr. Greene sufficiently alleges a UCL claim. Once more, Defendants fail to acknowledge key language in the Complaint, and argue Mr. Greene's only "fraudulent" theory is based on an "omission." MTD at 13. Yet Mr. Greene alleges that Defendants made affirmative misleading statements about its publicly available data: "Further, through the above-described conduct, including public-facing representations about *NotebookLM's* outputs and generalized statements about training on 'publicly available' data without disclosure that the male AI host voice was engineered to imitate Mr. Greene's distinctive voice, Google engaged in fraudulent and/or deceptive practices likely to mislead reasonable consumers about the provenance of the host voices." Complaint Ct. II, ¶ 11. This statement sufficiently asserts liability under the fraud prong at this stage. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (pleading alleging fraud is satisfactory "if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations"), *see also E & E Co. v. Kam Hing Enters., Inc.*, 429 F. App'x 632, 633 (9th Cir. 2011) (noting "relaxed" particularity requirement in alleging fraud for "matters within the opposing party's knowledge" because "plaintiffs will not have personal knowledge of all of the underlying facts."). These allegations plausibly establish conduct likely to mislead reasonable consumers as to the provenance of the product's voice outputs.

**Mr. Green sufficiently pleads unjust enrichment/quasi contract claims.** Unjust enrichment claims should proceed where a plaintiff plausibly alleges defendants obtained and unjustly retained a benefit at the plaintiff's expense. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Defendants misread the law and the Complaint.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS; CASE NO. 3:26-cv-01773-CRB

First, on the law, Defendants fail to acknowledge that courts are split, some *do* recognize a separate cause of action for unjust enrichment. "Both the Ninth Circuit and the California Supreme Court construe California law to permit a cause of action for unjust enrichment." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1132–33 (N.D. Cal. 2023) (citing *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016) and *Hartford Casualty Ins. Co. v. J.R. Marketing*, L.L.C., 353 P.3d 319 (2015)). Additionally, common law principles of restitution "require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'" *Astiana* 783 F.3d at 762 (quoting *Munoz v. MacMillan*, 124 Cal. Rptr. 3d 664, 675 (2011)).

Second, the Complaint pleads both benefit and unjust retention, which Defendants failed to acknowledge in the Motion to Dismiss. Even a "straightforward statement is sufficient." *Astiana* 783 F.3d at 762–63 (noting that a statement that the plaintiffs "was entitled to relief under a 'quasi-contract' cause of action because [the defendant] had 'enticed' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" was sufficient to state a quasi-contract cause of action). Here, the Complaint far exceeds what's required.

The Complaint plausibly alleges that Defendants obtained a concrete economic benefit by exploiting Mr. Greene's voice and persona to develop and monetize *NotebookLM*. *See* Complaint ¶¶ 6, 25 (alleging that Google earned "billions in profits, in part due to the success of *NotebookLM*" and integrated the product into paid subscription offerings). The Complaint further alleges that Mr. Greene's voice is a core feature of the product incorporated into outputs and designed to mimic his cadence, tone, and persona to enhance user engagement and appeal. *Id.* ¶¶ 3, 16–17, 42, 65. Those are concrete factual allegations, allegations unmentioned in the MTD, explaining how Defendants derived value from Mr. Greene's identity. And the Complaint expressly alleges that this use contributed to *NotebookLM's* popularity, with users generating content "because of the appeal . . . associated with Mr. Greene," thereby driving the product's growth. *Id.* ¶ 4.

Next, the Complaint plausibly alleges that Defendants' retention of that benefit is unjust.

It alleges that Defendants commercialized Greene's voice and likeness without consent or compensation, while retaining the resulting profits for themselves. *Id.* ¶¶ 16, 18. This is in contrast to established practices, where "companies like Speechify have already recognized that AI audio products require real licensing agreements" with public figures. *Id.* ¶ 71. In other words, Defendants captured the economic value of a marketable asset belonging to Mr. Greene and retained it under circumstances where equity requires restitution. At the pleading stage, nothing more is required.

**Alphabet Inc. is a proper defendant.** Defendants argue that Alphabet is not a proper defendant based on derivative liability theories. MTD at 14**.** But the Complaint ties Alphabet to the very products, revenue streams, and strategic decisions underlying the claims, and alleges that Alphabet "wholly owns and *controls*" (emphasis added) Google and YouTube, that they operate as a unified entity, and that Google is the alter ego and agent of Alphabet. Complaint ¶¶ 23–24, 30. It further alleges that the companies share a CEO, who discussed YouTube and Google One (which includes *NotebookLM*) together to show "strong momentum across the company." *Id.* ¶ 48. Parent companies like Alphabet, Inc., can be directly liable. *See United States v. Bestfoods*, 524 U.S. 51, 64 (1998) ("[N]othing in the statute's terms bars a parent corporation from direct liability for its own actions in operating a facility owned by its subsidiary."). Alphabet is therefore a proper defendant and, at least, it is too early to dismiss it.

## V.    CONCLUSION

Where no copyright claim is pleaded or implicated, Defendants' MTD is not properly before this Court. The Court should grant Mr. Greene's motion for remand, and deny the MTD as moot. Regardless, the MTD fails to show that copyright law preempts Mr. Greene's claims or that Mr. Greene insufficiently alleged facts supporting each of his causes of action.

15

Dated: May 8, 2026          Respectfully Submitted,

                            **BOIES SCHILLER FLEXNER LLP**

                            */s/ Joshua Michelangelo Stein*
                            Joshua Michelangelo Stein

                            Mark C. Mao, CA Bar No. 236165
                            mmao@bsfllp.com
                            Joshua Michelangelo Stein, CA Bar No.298856
                            jstein@bsfllp.com
                            Jake A. Glendenning, CA Bar No. #345463
                            jglendenning@bsfllp.com
                            **BOIES SCHILLER FLEXNER LLP**
                            44 Montgomery St., 41st Floor
                            San Francisco, CA 94104
                            Tel.: (415) 293-6800
                            Fax: (415) 293-6899

                            Amy Ren[9]
                            aren@bsfllp.com
                            **BOIES SCHILLER FLEXNER LLP**
                            55 Hudson Yards,
                            New York, NY 10001
                            Tel.: (212) 446 2369
                            Fax: (212) 446 2350

                            *Attorneys for Plaintiff*

---

[9] Not admitted in California. Motion for admission *pro hac vice* forthcoming if this action remains in federal court.

16