KEKER, VAN NEST & PETERS LLP
MICHELLE YBARRA - # 260697
mybarra@keker.com
SARAH SALOMON - # 308770
ssalomon@keker.com
SANA A. SINGH - # 342614
ssingh@keker.com
ELEANOR F. BROCK - # 346681
ebrock@keker.com
YEGINA WHANG - # 350287
ywhang@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants
GOOGLE LLC and ALPHABET INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID L. GREENE,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>    Defendants. | Case No. 3:26-cv-01773-CRB<br><br>**DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:        June 12, 2026<br>Time:        10:00 a.m.<br>Dept:        Courtroom 6 – 17th Floor<br>Judge:      Hon. Charles R. Breyer<br><br>Complaint Filed:      January 23, 2026<br><br>Action Removed:      March 2, 2026<br><br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND ............................................................................................................2

    A.    Google's AI Product ...........................................................................................2

    B.    Greene's Lawsuit ................................................................................................2

III. LEGAL STANDARD.......................................................................................................3

IV. ARGUMENT....................................................................................................................4

    A.    The Copyright Act preempts each of Greene's claims. ...........................................4

        1.    Greene's claims fall within the subject matter of copyright. .......................5

        2.    Greene fails to establish that the works at issue in his claims fall outside the scope of copyright. ...................................................................7

            a.    Greene cannot ignore his extensive allegations that Google misappropriated copyrightable recordings......................................7

            b.    Greene cannot escape preemption simply because he has not pleaded all the elements of a copyright claim.................................8

            c.    Greene's authority does not establish that his claims fall outside the scope of copyright. ........................................................9

        3.    The rights Greene asserts are equivalent to copyright rights....................12

    B.    Preemption of even one claim is sufficient to confer jurisdiction. .........................15

V. CONCLUSION...............................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ..............................................................................6

*Best Carpet Values, Inc. v. Google*,
LLC, 90 F.4th 962 (9th Cir. 2024)........................................................................5, 8, 15

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)..........................................................................................................4

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020) ...........................................................................................6

*Daniher v. Pixar Animation Studios*,
2022 WL 1470480 (N.D. Cal. May 10, 2022) .......................................................... passim

*Dead Kennedys v. Biafra*,
37 F. Supp. 2d 1151 (N.D. Cal. 1999) ..........................................................................4, 9

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) .........................................................................................11

*Firoozye v. Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) ..................................................................... passim

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)..........................................................................................................6

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
617 F.3d 1146 (9th Cir. 2010) .......................................................................................12

*JustMed, Inc. v. Byce*,
600 F.3d 1118 (9th Cir. 2010) .........................................................................................4

*Laws v. Sony Music Ent., Inc.*,
448 F.3d 1134 (9th Cir. 2006) ................................................................................. passim

*Lehrman v. Lovo, Inc.*,
790 F. Supp. 3d 348 (S.D.N.Y. 2025)............................................................................11

*Maloney v. T3Media*,
853 F.3d 1004 (9th Cir. 2017) .............................................................................7, 12, 13

*Mattel, Inc. v. Bryant*,
441 F. Supp. 2d 1081 (C.D. Cal. 2005) .......................................................................3, 7

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ...............................................................................10, 11, 12

*Motown Records Corp. v. George A. Hormel & Co.*,
   657 F. Supp. 1236 (C.D. Cal. 1987) ................................................................................14

*No Doubt v. Activision Publ'g, Inc.*,
   702 F. Supp. 2d 1139 (C.D. Cal. 2010) ...........................................................................10

*NTD Architects v. Baker*,
   2012 WL 2498868 (S.D. Cal. June 27, 2012)................................................................3, 15

*O'Brien v. PopSugar Inc.*,
   2019 WL 462973 (N.D. Cal. Feb. 6, 2019) ..................................................................11, 14

*In re OpenAI, Inc. Copyright Infringement Litig.*,
   2025 WL 3003339 (S.D.N.Y. Oct. 27, 2025)......................................................................6

*Pizarro v. Aguilar*,
   2010 WL 11598015 (C.D. Cal. July 6, 2010)......................................................................4

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010)............................................................................................................9

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   2007 WL 1455903 (N.D. Cal. May 16, 2007).....................................................................14

*Trenton v. Infinity Broad. Corp.*,
   865 F. Supp. 1416 (C.D. Cal. 1994) ....................................................................................9

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992) ........................................................................................10, 11

*White v. Samsung Elecs. Am., Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ............................................................................................10

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ............................................................................................13

*Wimer v. Reach Out Worldwide, Inc.*,
   2017 WL 5635461 (C.D. Cal. July 13, 2017)....................................................................4, 9

*Worth v. Universal Pictures, Inc.*,
   5 F. Supp. 2d 816 (C.D. Cal. 1997) .....................................................................................4

*Xerox Corp. v. Apple Computer, Inc.*,
   734 F. Supp. 1542 (N.D. Cal. 1990) ...................................................................................14

*Young v. Greystar Real Est. Partners, LLC*,
   2019 WL 4169889 (S.D. Cal. Sept. 3, 2019).......................................................................13

iii

*Yu v. ByteDance Inc.*,
  2023 WL 5671932 (N.D. Cal. Sept. 1, 2023) ........................................................................14

**State Cases**

*Fleet v. CBS, Inc.*,
  50 Cal. App. 4th 1911 (1996) ...............................................................................2, 8, 11, 12

*KNB Enters. v. Matthews*,
  78 Cal. App. 4th 362 (2000) ................................................................................................11

**Federal Statutes**

17 U.S.C. § 101.......................................................................................................................6

17 U.S.C. § 102............................................................................................................. *passim*

17 U.S.C. § 103.......................................................................................................................4

17 U.S.C. § 106..................................................................................................................4, 13

28 U.S.C. § 1338.....................................................................................................................3

28 U.S.C. § 1367.................................................................................................................4, 15

28 U.S.C. § 1441.....................................................................................................................3

28 U.S.C. § 1454.....................................................................................................................3

**State Statutes**

Cal. Bus. Prof. Code § 17200 ................................................................................................2

Cal. Civ. Code § 3344.................................................................................................. *passim*

6194918

## I.    INTRODUCTION

The gravamen of Plaintiff David Greene's Complaint is that Google copied recordings of his radio and podcast episodes and used them to create a competing product: *NotebookLM*'s Audio Overviews podcasts. These allegations concern a "misappropriation of [his] voice [where] the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1141 (9th Cir. 2006). Greene's claims fall squarely within the subject matter of and assert rights governed by the Copyright Act. Consequently, the complete preemption doctrine applies, and federal question jurisdiction exists.

In an effort to avoid this result, Greene disavows the Complaint's extensive references to "recordings" and "audio outputs." Remarkably, Greene claims these statements were made "in passing" and complains that Google is "[c]herry-picking" allegations. ECF No. 23 at 1, 6. Yet, to avoid dismissal, Greene now admits that he alleges Google "used 'recordings' of his voice" and created a product that "contains 'memorized' voice recordings of Mr. Greene" and "output[s] actual copies" of those recordings. ECF No. 28 at 8–9. These admissions confirm that the Complaint, at its core, asserts copyright claims disguised as state law causes of action.

But even without the benefit of Greene's concession, the Complaint speaks for itself. From the first paragraph, Greene alleges that Google "used . . . ***stolen copies***" of his sound recordings to create *NotebookLM*. ECF No. 1-3 ("Compl.") ¶ 1 (emphasis added). Google's alleged use of sound recordings, which are textbook "tangible medium" for preemption purposes, is the *only* mechanism Greene provides for Google's appropriation of his voice. *See id.* ¶¶ 12, 16. He continues to expound upon that alleged misuse of sound recordings throughout the Complaint, concluding his factual allegations with an assertion that Google has created a "competing product ***derived from his works***." *Id.* ¶ 72 (emphasis added); *see also id.* ¶¶ 18, 68, 70. The remedies he seeks—deletion of his sound recordings—likewise sound in copyright. *Id.*, Prayer for Relief ¶ 7.

Federal question jurisdiction turns on the allegations in the Complaint. Greene cannot avoid copyright preemption by ignoring his own allegations or promising that he did not intend to plead a copyright claim. And, contrary to his assertions, the caselaw he cites does not establish a categorical rule exempting voice misappropriation claims from preemption. Were that so, cases

1

like *Laws* and *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996)—which found copyright preemption where the plaintiff pleaded a right of publicity claim—would not exist. Greene's allegations closely track the allegations in those cases and likewise support preemption here. And even if the Court were to find just one claim preempted (or preempted in part), that would be sufficient to confer subject matter jurisdiction. The Court should deny the Motion to Remand.

## II.    BACKGROUND

### A.    Google's AI Product

Google is an "internet company that creates, markets, and sells software and hardware technology products."[1] Compl. ¶ 32. In July 2023, Google launched *NotebookLM*, an AI product that enables users to, *inter alia*, "create podcasts with AI-generated virtual hosts from documents they have shared" through its "Audio Overviews" feature. *Id.* ¶¶ 34, 41, 43. The podcasts generated by *NotebookLM* "feature[] two 'AI hosts': one male and one female voice."[2] *Id.* ¶ 52.

Greene is a journalist and was, until 2021, a host of the NPR program *Morning Edition*. *Id.* ¶¶ 21–22. He alleges that Google used "copies" of his voice, *id.* ¶ 1, to create the *NotebookLM* voice. *Id.* ¶ 34. Specifically, Greene alleges that Google "cop[ied] a massive corpus of text and media" to create a "training dataset," which included "recordings featuring [Greene's] voice." *Id.* ¶¶ 12, 35, 65. Greene further alleges that *NotebookLM* itself constitutes "a competing product derived from his works," *id.* ¶ 72, because it purportedly allows users to create podcasts imitating his "performance," "words," "editorial style, journalistic voice, and creative expression" and to copy his "show formats." *Id.* ¶¶ 18, 68, 70.

### B.    Greene's Lawsuit

Greene filed his Complaint in Santa Clara County Superior on January 23, 2026. *See* ECF No. 1-2. The Complaint asserts four causes of action: (1) violation of California's right of publicity statute under California Civil Code section 3344; (2) unfair competition under California Business

---

[1] Alphabet, Inc. is Google's parent corporation. Compl. ¶ 24. Alphabet is not a proper defendant and should be dismissed, as set forth in Defendants' Motion to Dismiss. ECF No. 21 at 14.

[2] The Complaint refers to *NotebookLM*'s male voice as "Charlie." Compl. ¶ 42. Defendant did not name it "Charlie." To avoid confusion, Defendants refer to the male Audio Overviews voice as the "*NotebookLM* voice."

2

& Professions Code section 17200; (3) violation of the right of publicity under California common law; and (4) a quasi-contract/unjust enrichment claim. Compl. at 21–24. On March 2, 2026, Defendants timely removed this action, invoking this Court's federal question jurisdiction. *See* ECF No. 1. After removal, Greene repeatedly indicated that he intended to move to remand by early April. *See, e.g.*, ECF No. 13-1 ¶ 3; ECF No. 19 at 2. Based on these representations, the Court twice extended Defendants' deadline to respond to the Complaint. *See* ECF Nos. 17, 20. Greene, however, did not move to remand in early April, claiming he needed jurisdictional and/or early discovery to resolve the "complete preemption issue."[3] Declaration of Sarah Salomon ("Salomon Decl."), Exs. C, D. On April 29, 2026, Greene filed his Motion to Remand (the "Motion") without moving to compel any such discovery. *See* ECF No. 23.

## III.   LEGAL STANDARD

A defendant may remove any state-court civil action over which this Court has original subject matter jurisdiction. 28 U.S.C. § 1441(a). This Court has original jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights" and "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright" laws. 28 U.S.C. § 1338(a)–(b); *see also* 28 U.S.C. § 1454(a). In "determining whether a particular state law claim is completely preempted . . . for purposes of removal jurisdiction, the court may look to the factual allegations in the complaint and the information included in the notice of removal." *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1092 (C.D. Cal. 2005). "The preemption of just one claim is sufficient to warrant removal." *NTD Architects v. Baker*, 2012 WL 2498868, at *8 (S.D. Cal. June 27, 2012). If the Court has original jurisdiction over one claim, it may exercise

---

[3] Greene's demand for "early discovery"—in addition to his continual delay in bringing this Motion—belies his assertion that the Court's preemption analysis is straightforward and that his claims "clearly do not implicate the Copyright Act." Mot. at 13. Moreover, the discovery Greene has sought only confirms that his claims sound in copyright. *See* Salomon Decl., Ex. B (requesting broad categories of information regarding *NotebookLM*'s pre-training data, including, *inter alia*, the identification of "every Dataset . . . that included any audio from NPR, KCRW, 'Left, Right & Center,' 'Morning Edition,' or other programs featuring Plaintiff . . . including how the audio was acquired (Including whether by web crawling, web scraping, partnership, license, or purchase), the date or date range the audio was ingested, and any filtering, exclusion, de-identification, or mitigation measures applied to the audio data."). Tellingly, Greene argued that early "jurisdictional discovery" would confirm, among other things, whether Defendants "**infringed his copyright**." *Id.*, Ex. D (emphasis added).

DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. 3:26-cv-01773-CRB

6194918

supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367.

## IV.    ARGUMENT

### A.    The Copyright Act preempts each of Greene's claims.

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Courts in the Ninth Circuit, including this Court, routinely find removal justified where state law claims are preempted under the Copyright Act. *See, e.g., Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1123 (N.D. Cal. 2001) (Breyer, J.) ("[I]f any of the plaintiff's claims are preempted under the Copyright Act . . . [t]his Court would then possess subject matter jurisdiction . . . thereby requiring the Court to deny the plaintiff's motion to remand."); *Daniher v. Pixar Animation Studios*, 2022 WL 1470480, at *5 (N.D. Cal. May 10, 2022) (denying remand on copyright preemption grounds); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 820 (C.D. Cal. 1997) (same).[4] "[F]ederal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium." *Laws,* 448 F.3d at 1141. A state law claim is preempted if it: (1) falls within the subject matter protected by the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103; and (2) asserts rights equivalent to those protected by § 106.[5] *Id.* at 1137. Greene's claims satisfy both prongs of the analysis.

---

[4] Greene tries to distinguish *Pizarro v. Aguilar,* 2010 WL 11598015 (C.D. Cal. July 6, 2010), *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010), and *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816 (C.D. Cal. 1997)—the cases cited in the Notice of Removal for the straightforward proposition that the Copyright Act has complete preemptive force—by arguing that those cases "raised ownership and distribution disputes" not present here. Mot. at 7–8. But "[t]he owner of a copyright has several exclusive rights under the Copyright Act," including the core rights "to reproduce the work, create derivative works, and distribute the work." *JustMed*, 600 F.3d at 1124. Greene's Complaint implicates those core rights, and need not implicate copyright ownership to be preempted.

[5] Greene argues that the Court should remand without reaching the preemption analysis because his claims "clearly do not implicate the Copyright Act." Mot. at 12–14. The Ninth Circuit has never articulated such an exception to its two-part test and, indeed, both cases on which Greene relies contain a preemption analysis. *Wimer*, 2017 WL 5635461, at *3–6; *Dead Kennedys v. Biafra*, 37 F. Supp. 2d 1151, 1154 (N.D. Cal. 1999). Greene's argument is also circular: the whole purpose of the preemption test is to determine whether a plaintiff's claims fall within the ambit of the Copyright Act even though he has pleaded them under state law. *Firoozye*, 153 F. Supp. 2d at 1120. Greene cannot avoid its application by summarily declaring his Complaint does not implicate copyright law.

6194918

**1.    Greene's claims fall within the subject matter of copyright.**

Each of Greene's claims involves "a kind of work that comes within the subject matter of the Copyright Act." *Firoozye*, 153 F. Supp. 2d at 1125. "[T]he subject matter of copyright encompasses original works of authorship fixed in any tangible medium of expression, . . . from which they can be . . . reproduced[.]" *Best Carpet Values, Inc. v. Google*, LLC, 90 F.4th 962, 971 (9th Cir. 2024) (cleaned up). The works at issue in Greene's claims do not "have to be actually protected by a specific copyright or even [themselves] be copyrightable; [they] just ha[ve] to be 'within the subject matter' of the Act." *Firoozye*, 153 F. Supp. 2d at 1124.

Here, each of Greene's claims is based on allegations that Google downloaded "recordings featuring [Greene's] voice" and "used those stolen copies to develop, train, and refine" the *NotebookLM* voice. Compl. ¶¶ 1, 35 (emphasis added). Those recordings—radio broadcasts and podcasts—are copyrightable sound recordings and audiovisual works protected under the Copyright Act. *See* 17 U.S.C. § 102. Greene's claims thus fall within the subject matter of copyright, and Greene's claim-specific allegations confirm this:

***Right of Publicity***: Underlying both of Greene's publicity claims are allegations that Google "used stolen copies" of recordings of Greene to "develop, train, and refine" *NotebookLM*. Compl. ¶ 1. To do so, Google allegedly "downloaded [and] copied" recordings of Greene's voice from his various radio shows and podcasts using its "technical ability to capture streams of radio, podcasts, and/or audiobooks." *Id.* ¶¶ 2, 16, 40, 65; *see also, e.g., id.* ¶ 18 (alleging that Google used Greene's "performance and words"); *id.* ¶ 12 (alleging that the training data contains "a massive corpus of text and media"); *id.* ¶ 65 (alleging "Greene's decades-long radio and podcasting career provided clear datasets that trained Google's voice model"). The Complaint further alleges that Google used these sound recordings to create derivative works. *See id.* ¶ 72 (alleging that "Google used Mr. Greene's voice without authorization to create and promote a competing product ***derived from his works***" (emphasis added)); *id.* ¶ 70 (alleging that users can create podcasts with the *NotebookLM* voice that copy Greene's "show formats"); *id.* ¶ 12 (alleging that *NotebookLM* "output[s] copies of [its] training data").[6] According to Greene, his voice "[could not] and would

---

[6] Based on Greene's allegations, both *NotebookLM* and its outputs constitute derivative works of

not be in the [*NotebookLM*] podcast productions without having been in the training data in the first place." *Id.* ¶ 16; *see also id.*, Count 3 ¶ 2 (common law publicity claim based on the creation of the *NotebookLM* voice using Greene's recordings); *id.*, Count 1 ¶ 5 (statutory publicity claim based on the creation of the *NotebookLM* voice using Greene's recordings). These allegations—which are premised on Google's alleged use of copyrightable recordings from Greene's radio and podcast shows—bring his right of publicity claims within the scope of copyright.[7] *See* 17 U.S.C. § 102; *Laws,* 448 F.3d at 1141.

In opposition to Defendants' Motion to Dismiss, Greene has further confirmed that his section 3344 claim is based, in part, on *NotebookLM*'s alleged use of his voice recordings as inputs and regurgitation of those same recordings as outputs. *See* ECF No. 28 at 8–9 (arguing that *NotebookLM* "'memorized' voice recordings of Mr. Greene" and "output[s] copies of [its] training data"). Such allegations are identical to those raised elsewhere in AI copyright cases, including those filed by Greene's counsel. *See, e.g.*, *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 864 (N.D. Cal. 2023) (allegations that the defendant had downloaded copyrighted material to train its AI model sufficient to allege a copyright infringement claim); *In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3003339, at *7–10 (S.D.N.Y. Oct. 27, 2025) (allegations of substantially similar outputs sufficient to allege infringement claim).

***UCL***: Greene's UCL claim is based on the same allegations as his right of publicity claims. Compl., Count Two ¶¶ 7, 9, 10. Greene concedes as much by relying on the same analysis under the first prong for all three claims. *See* Mot. at 4–10. Like his right of publicity claims, the UCL claim concerns Google's alleged use of Greene's recordings to train *NotebookLM* and statements to

his copyrightable voice recordings. *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works, such as a . . . sound recording[.]").

[7] Greene contends that his claims fail to satisfy the first prong because "[v]oices are not copyrightable, nor is 'editorial style,' 'journalistic voice,' 'creative expression,' or 'show formats.'" Mot. at 7 (citing ECF No. 1 ¶ 5). But "creative expression," "format", and "style" are precisely what copyright law protects. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985) ("The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality."); *Corbello v. Valli*, 974 F.3d 965, 976 (9th Cir. 2020) ("style and presentation" are protected by copyright). Greene also conveniently ignores the remaining allegations included in the Notice of Removal regarding Google's alleged use of "stolen copies" and Greene's words. ECF No. 1 ¶¶ 3, 5.

6

DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. 3:26-cv-01773-CRB

6194918

customers regarding that use. *See* Compl., Count Two ¶¶ 7–11. Therefore, the UCL claim too concerns works that fall within copyrightable subject matter. *See Maloney v. T3Media*, 853 F.3d 1004, 1020 (9th Cir. 2017) (preempting publicity claims and "derivative UCL claim").

　　　　*Unjust Enrichment*: As Greene concedes, his unjust enrichment claim is also premised on the allegations underlying his right of publicity claim. *See* Mot. at 4–10. The unjust enrichment claim arises from Google's alleged misappropriation of radio and podcast recordings featuring Greene's voice to "develop, promote, and sell" *NotebookLM*, Compl., Count Four ¶ 2—all of which would not be possible "without [the sound recordings] having been in the training data in the first place." *Id.* ¶ 16. Accordingly, Greene's unjust enrichment claim also comes within the subject matter of copyright. *See Daniher,* 2022 WL 1470480, at *5 (unjust enrichment claim preempted where it was predicated on unauthorized use of a copyrighted work).

### 2.　　Greene fails to establish that the works at issue in his claims fall outside the scope of copyright.

#### a.　　Greene cannot ignore his extensive allegations that Google misappropriated copyrightable recordings.

　　　　The facts alleged in Greene's Complaint govern the removal analysis. *See Mattel,* 441 F. Supp. 2d at 1092. Yet, Greene refuses to engage with his own extensive allegations of copying, instead accusing Google of "[c]herry-picking stray mentions of copyrightable source material." Mot. at 1. But Greene authored the Complaint and incorporated ***all*** of his allegations into every substantive count. The Complaint is riddled with allegations of misappropriation of copyrightable material, with just a few illustrative examples below:

- "Google used Mr. Greene's voice without authorization and then used those ***stolen copies*** to develop, train, and refine its AI broadcasting product, *NotebookLM*." Compl. ¶ 1 (emphasis added).

- "[A]n LLM is 'trained' by copying a massive corpus of text and media and extracting both the facts and ***the creative expression*** of these ideas, sounds, and depictions from the data." *Id.* ¶ 12 (emphasis added).

- "Google ***downloaded***, ***copied***, and/or otherwise imitated Mr. Greene's voice . . . . That Google sought to replicate Mr. Greene's voice and personality ***for both training and output*** is evidenced by the generative podcasts created, because his singular voice, including even mannerisms, ***cannot and would not be in the podcast productions without having been in the training data in the first place***." *Id.* ¶ 16 (emphasis added).

7

- "*NotebookLM* . . . downloaded, trained on, and thereby misappropriated [Greene's] voice and/or recordings featuring his voice, using the same as **inputs**." *Id.* ¶ 35 (emphasis added).

- "Defendants have not acknowledged Mr. Greene's contribution, obtained permission from Mr. Greene to use his voice, **performance**, and **words**[.]" *Id.* ¶ 18 (emphasis added).

- "Google used Mr. Greene's voice without authorization to create and promote a competing product **derived from** his works." *Id.* ¶ 72 (emphasis added).

Having made these allegations and having had ample opportunity to amend his Complaint, Greene cannot now pretend they simply do not exist. Nor can Greene escape the import of these allegations simply by promising that "[he] is not asserting a copyright claim." *See* Mot. at 4 n.4, 13. What matters is what Greene pleaded—which are claims predicated on the illicit copying and use of his voice recordings. *See Fleet*, 50 Cal. App. 4th at 1920.[8]

> **b.    Greene cannot escape preemption simply because he has not pleaded all the elements of a copyright claim.**

Next, Greene contends that because he has not pleaded "standard . . . requirements that one would normally include in a copyright complaint," his claims fall outside the scope of copyright. Mot. at 13. But, whether the specific works at issue are **in fact** copyrightable is not the inquiry: the "scope of the subject matter of copyright law is broader than the protections it affords," *Best Carpet*, 90 F.4th at 972 (citation omitted), and it extends "beyond the tangible expressions that can be protected under the [Copyright] Act to elements of expression which themselves cannot be protected.'" *Firoozye*, 153 F. Supp. 2d at 1125. In *Daniher*, for example, the court denied remand even though the plaintiff "argue[d] that the [work] is not within the subject matter of copyright because she cancelled her copyright registration after the parties agreed that she did not have a federal copyright claim." 2022 WL 1470480, at *4. The court explained that "the question here is

---

[8] Bizarrely, Greene also claims that Google has "conceded that copyright is not at issue" because its spokesperson "stated publicly that the 'sound of the male [*NotebookLM*] voice' . . . is 'based on a paid professional actor Google hired.'" Mot. at 4. But this statement does not alter the fact that Greene **continues to assert** claims based on Google's alleged copying of Greene's voice recordings, which that fall within the scope of copyright. *See* 17 U.S.C. § 102. Separately, Greene has known since at least November 2025, **before** he filed the Complaint, that Google used a paid voice actor, which Google's spokesperson publicly confirmed on February 12, 2026. Salomon Decl. ¶ 2. Greene could have, at any point since, amended his Complaint to excise allegations related to the copying of copyrighted recordings, but failed to do so.

6194918

not whether a work is protected by copyright, but rather whether it is the kind of work covered by the Copyright Act." *Id.* at *5.[9]

There is no question—and Greene does not dispute—that his voice recordings are copyrightable. *See Trenton v. Infinity Broad. Corp.*, 865 F. Supp. 1416, 1425 (C.D. Cal. 1994) ("[R]adio program broadcasts constitute 'sound recordings,' which, under § 102(a)(7), come within the subject matter of federal copyright law."). Instead, relying on *Wimer v. Reach Out Worldwide, Inc.*, 2017 WL 5635461, at *2 (C.D. Cal. July 13, 2017), Greene suggests that his claims fall outside the scope of copyright because he has not pleaded a copyright registration. Mot. at 13. That omission is irrelevant. *See Laws*, 448 F.3d at 1143 (preempting claim even though the plaintiff did not own the copyright registration); *Daniher*, 2022 WL 1470480, at *4 (same). *Wimer* also relied on outdated authority, and did not consider *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010), in which the Supreme Court held that failure to obtain copyright registration "does not restrict a federal court's subject-matter jurisdiction." *Wimer* is further distinguishable because the state law claim concerned the unlawful retention of tangible property rather than misappropriation of a copyrightable work. 2017 WL 5635461, at *4.[10]

### c. Greene's authority does not establish that his claims fall outside the scope of copyright.

Rather than address the allegations as pleaded, Greene devotes most of the Motion to identifying caselaw which he contends establishes, conclusively, that his claims are not preempted. *See* Mot. at 4–10. But none of the cases Greene cites establish a *per se* rule exempting voice misappropriation claims from copyright preemption. *See id.* at 5. Instead, each of these cases turns on whether, as here, "the entirety of the allegedly misappropriated vocal performance is contained

[9] Greene argues that *Daniher* and *Firoozye* are distinguishable because they involved copyright ownership and distribution issues. *See* Mot. at 7–8. But those facts had no bearing on the court's preemption rulings. *See Firoozye*, 153 F. Supp. 2d at 1129–30 (preempting state law claims because they focused on the retention of a benefit from and sought damages for the unlawful reproduction of a software program); *Daniher*, 2022 WL 1470480, at *4 (preempting unjust enrichment claim even though the plaintiff did not own a copyright registration).

[10] Greene's reliance on *Dead Kennedys*, 37 F. Supp. 2d at 1154, also misses the mark. *See* Mot. at 13. There, the court declined to find complete preemption because the dispute involved co-owners of a copyright seeking an accounting and determination of ownership—in other words, remedies that are not provided by the Copyright Act. *Dead Kennedys*, 37 F. Supp. 2d at 1153–54.

6194918

within a copyrighted medium." *Laws*, 448 F.3d at 1141. In other words, "the subject matter of a right of publicity in one's voice is not different from a copyright claim when the voice is embodied within a copyrighted sound recording." *Id.* at 1139.

For example, Greene relies on *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988), and *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992), for the proposition that "a claim based on the deliberate imitation of a distinctive voice for commercial purposes is not preempted by federal copyright law because 'a voice is not copyrightable.'" Mot. at 4. But Greene's reliance on *Midler* and *Waits* is misplaced; his allegations concerning the use of sound recordings look nothing like the claims asserted in either case. In both cases, the plaintiffs specifically asserted that the defendants had hired ***a soundalike actor*** to imitate their "distinctive" and "widely known" voices "to sell a product."[11] *Midler*, 849 F.2d at 463; *Waits*, 978 F.2d at 1098. This theory was sufficient to support a voice misappropriation claim because it went far beyond the use of a sound recording. *Midler*, 849 F.2d at 461; *Waits*, 978 F.2d at 1100.

The Ninth Circuit subsequently drew a clear line distinguishing preempted publicity claims concerning the use of sound recordings (as Greene alleges here) and non-preempted publicity claims concerning the use of voice actors (as the *Midler* and *Waits* plaintiffs alleged). *Laws*, 448 F.3d at 1140–41. In *Laws*, the plaintiff—like Greene—alleged that Sony had violated her right of publicity by sampling a sound recording featuring her voice and argued that her claim was not based on the "mere act of reproduction, but [was] for the use of [her] voice, the combination of her voice with another artist['s], and the commercial exploitation of her voice and name in a different product without her consent." *Id.* at 1144 (cleaned up). The Ninth Circuit rejected this argument, holding that the right of publicity claim was "part and parcel" of a copyright claim because "the entirety of the allegedly misappropriated vocal performance [was] contained within a copyrighted medium." *Id.* In so holding, the court distinguished *Midler* and *Waits* where the challenged conduct concerned the hiring of a voice actor to imitate the plaintiff's voice. *Id.* at 1140–41. By contrast,

---

[11] Similarly, *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992), involved a robot lookalike of the plaintiff's likeness. And, in *No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1146 (C.D. Cal. 2010), preemption did not apply because the allegations concerned cartoons resembling the plaintiffs' likenesses—not "songs" or "performances."

DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. 3:26-cv-01773-CRB

6194918

Greene's Complaint does not allege the use of a soundalike actor; it is instead premised on the copying of and creation of derivative works from his sound recordings—just like the plaintiff in *Laws*.[12] *See supra* Section IV(A)(1).

Greene's reliance on *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), is likewise misplaced. There, the Ninth Circuit declined to preempt the plaintiffs' publicity claims because the defendant "went well beyond mere republication of the photograph [of the plaintiffs]," by publishing it in connection with an advertising campaign, identifying the plaintiffs by name, and offering "for sale the same t-shirts worn by the plaintiffs in the photo." *Laws*, 448 F.3d at 1141 (citing *Downing*, 265 F.3d at 1003). The claims were therefore based on "the use of the plaintiffs' likenesses and their names pictured in the published photograph," and not the publication of the photograph itself. Preemption was rejected in *O'Brien v. PopSugar Inc.*, 2019 WL 462973 (N.D. Cal. Feb. 6, 2019) for similar reasons. *Id.* at *3 (no preemption where plaintiff alleged misappropriation of non-photographic elements of their likenesses and identities). By contrast, the misappropriation at issue here concerns the use of Greene's voice ***in sound recordings***. *See supra* Section IV(A)(1). Moreover, the Complaint does not allege any facts regarding the use of Greene's name or likeness that bring this case within *Downing*'s ambit. In fact, Greene concedes that "Google never stated that the AI host was Mr. Greene" and suggests that he has the voice of your "typical NPR" podcaster." Compl. ¶ 61–62, 42.[13]

Greene's claims instead look far more like those found preempted in *Fleet* and *Laws*.[14] In

---

[12] *Midler* and *Waits* are further distinguishable because the Complaint contains no well-pleaded facts alleging his voice is distinct or widely known. *See Midler*, 849 F.2d at 463; *Waits*, 978 F.2d at 1100. Those assertions, to the extent they exist, are mere boilerplate, as explained in Defendants' Motion to Dismiss. ECF No. 21 at 9–11.

[13] *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348 (S.D.N.Y. 2025) does not advance Greene's argument as it did not consider preemption except in passing dicta. *See id.* at 381 n.23. *Lehrman* is especially inapt given that, unlike New York's right of publicity statute, section 3344 does not apply to digital replicas, as discussed in Defendants' Motion to Dismiss. *See* ECF No. 21 at 8–9. If anything, *Lehrman* supports Google's argument: plaintiffs there brought ***both*** a right of publicity claim and a copyright claim based on allegations that the defendant had used their voice recordings to train its AI model and create a voice clone. 790 F. Supp. 3d at 376–78, 383.

[14] Greene claims that *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362 (2000), limited *Fleet* to cases where a plaintiff "with no copyright interest in the work seeks to prevent the exclusive copyright holder from displaying the copyrighted work." *Id.* at 374. But the Ninth Circuit disavowed *KNB*'s holding just a few years later, concluding that it "do[es] not read *Fleet* . . . so narrowly" and that preemption "does not turn on what rights the alleged infringer possesses, but

11

6194918

*Fleet*, the plaintiffs brought a right of publicity claim for the distribution of a film in which they had appeared as actors. 50 Cal. App. 4th at 1915. The court preempted the claim because it centered on copyrightable "performances captured on film." *Id.* at 1921. Similarly here, Greene alleges that Google trained *NotebookLM* on his "performance," "mannerisms," "editorial style," "creative expression," "words," and "show formats," as captured in recordings. Compl. ¶¶ 16, 18, 68, 70. Those allegations bring his claims squarely within the scope of copyright. And, as explained above, *Laws* held that claims (like Greene's) premised on the use of sound recordings that contain the "entirety" of the misappropriated voice are preempted. *Laws*, 448 F.3d at 1141.

### 3. The rights Greene asserts are equivalent to copyright rights.

As to prong two of the preemption analysis, Greene asserts rights equivalent to those protected by and not "qualitatively different from" copyright rights. *Firoozye*, 153 F. Supp. 2d at 1125. As Greene concedes, "courts focus not on whether causes of action generally contain extra elements, but whether the claim specifically pled in the complaint contains extra elements." Mot. at 10 n.6 (citing *Laws*, 448 F.3d at 1144–45). And while right of publicity claims *may* contain an extra element depending on the allegations, *see Midler*, 849 F.2d at 462, there is no categorical rule exempting such claims from preemption. *See Laws*, 448 F.3d at 1144 ("The mere presence of an additional element . . . in section 3344 is not enough to qualitatively distinguish [a] right of publicity claim from a claim in copyright. The extra element must transform the nature of the action."); *Maloney*, 853 F.3d at 1012–13 (No "categorical rule that publicity-right claims 'relating to a likeness in a photograph' are not subject to preemption"). None of Greene's state law claims *as pleaded* has "an extra element which changes the nature of the action" from one that sounds in copyright. *Laws*, 448 F.3d at 1143 (citation omitted).

*Right of Publicity*: Greene's publicity claims seek to vindicate copyright rights: they are premised on the reproduction, distribution, and creation of derivative works from recordings of Greene's voice. *See* ECF No. 28 at 9 (conceding that the right of publicity claim is about Google

---

on . . . whether the rights are works of authorship fixed in a tangible medium of expression and come within the subject matter of the Copyright Act." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154 (9th Cir. 2010); *see also Laws*, 448 F.3d at 1142–43 (relying on *Fleet*).

DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. 3:26-cv-01773-CRB

6194918

copying and regurgitating Greene's sound recordings). Indeed, Greene's request for "permanent injunctive relief, including . . . the deletion of data acquired from or related to Mr. Greene and the immediate cessation of all products and services relying upon the same" confirms this conclusion. Compl., Prayer for Relief ¶ 7. These rights are conferred by and protected under the Copyright Act. *See* 17 U.S.C. § 106; *Laws*, 448 F.3d at 1144 (right of publicity claim premised on reproduction of a copyrighted recording is "part and parcel" of a copyright claim).

The Motion fails to identify *any* specific allegation that furnishes the "extra element" required. Instead, Greene contends that the fact that publicity claims require the use of "voice, likeness, or identity for commercial purposes without consent" is sufficient. Mot. at 10. But, as he concedes, "courts focus not on whether causes of action generally contain extra elements, but whether the claim specifically pled in the complaint contains extra elements." *See id.* at 10 n.6 (citing *Laws*, 448 F.3d at 1144–45). To the extent Greene believes that mere recitation of the right of publicity elements is sufficient to avoid preemption, he is mistaken; those allegations are boilerplate and need not be taken as true. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1144 n.4 (9th Cir. 2012). The only facts pleaded with any specificity to support Greene's voice misappropriation theory (and that are separate from the use of recordings) are that *NotebookLM* allegedly uses "uhms," "aahs," and "other human-sounding crutch words" that Greene also claims to use. Compl. ¶ 62. These generic filler words are not distinctive to any speaker and insufficient to furnish the "extra element." *See Young v. Greystar Real Est. Partners, LLC*, 2019 WL 4169889, at *4 (S.D. Cal. Sept. 3, 2019) (no right of publicity for non-identifying traits).

*UCL*: As Greene concedes, his UCL claim is based "on the same conduct as his publicity rights claims." Mot. at 11. And like Greene's right of publicity claims, the UCL claim is premised on Google's alleged use of Greene's voice recordings and representations regarding the source of those recordings. *See* Compl., Count 2 ¶ 12. To the extent Greene contends that the UCL claim contains extra elements because it requires an "unfair or fraudulent business act" and "unfair, deceptive, untrue or misleading advertising," he fails to provide any caselaw in support of his position. Mot. at 11. Nor can he, as courts have rejected that argument. *See Maloney*, 853 F.3d at 1019–20 (preempting right of publicity claims and "derivative UCL claim" where the unlawful

13

6194918

conduct pertained to the "display, reproduction, and distribution of the copyrighted material in which [the plaintiffs were] depicted"); *Motown Records Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239–40 (C.D. Cal. 1987) (preempting UCL claim challenging an ad "falsely implying" that a song and image were used with the plaintiff's consent because the claim's "essence . . . derived from [the] alleged unauthorized use of a copyrighted work").

The cases on which Greene relies are distinguishable as they involve non-copyrightable subject matter or false advertising related to the scope of a license. *See O'Brien*, 2019 WL 462973, at *4 (no preemption of UCL claim where the defendant created fake profiles for the plaintiffs using their names); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 WL 1455903, at *8 (N.D. Cal. May 16, 2007) (no preemption of UCL claim because the defendant falsely advertised that "customers may use the [plaintiff's] software in combination with the [defendant's product] without violating [the plaintiff's] [] Licensing Agreement"). By contrast, Greene's cursory allegation that Google's conduct confused consumers "about the provenance of" the *NotebookLM* voice," Compl., Count Two ¶ 11, is premised on the alleged copying underlying his right of publicity claims and therefore fails to transform this action. *See Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990) (UCL claim alleging that the defendant's use "caused [] confusion" preempted because the use was premised on copying).

Alternatively, at a minimum, Greene's UCL claim plainly rests at least in part on a copyright infringement theory. *See* Compl., Count Two ¶¶ 7–10; *see also* ECF No. 28 at 9, 12 (conceding that the unlawful prong of the UCL claim relies on a violation of section 3344 based on Google's alleged copying and regurgitation of sound recordings). The UCL claim expressly incorporates the "above-described conduct" regarding Google's alleged use of "stolen copies" of Greene's sound recordings, Compl. ¶ 1; copying of his "creative expression," *id.* ¶ 12; creation of outputs that constitute "copies" of the sound recordings, *id.*; and development of derivative works, *id.* ¶ 72. Greene therefore cannot seriously dispute that his UCL claim relies on at least one theory subject to complete preemption, which is sufficient to establish federal jurisdiction. *See Firoozye*, 153 F. Supp. 2d at 1131 (preempting a claim in part to the extent it was based on the plaintiff's conversion claim); *Yu v. ByteDance Inc.*, 2023 WL 5671932, at *6 (N.D. Cal. Sept. 1, 2023)

14

(preempting UCL claim in part to the extent it was based on the theory that the defendant had scraped videos from the internet and reproduced them without consent); *NTD Architects,* 2012 WL 2498868, at *8 (preemption of one claim sufficient to confer jurisdiction). Thus, while not the sole basis, such a finding offers the narrowest path to establishing this Court's jurisdiction.

***Unjust Enrichment***: Greene contends that his unjust enrichment claim "stems from non-copyright benefits." Mot. at 12. Not so. Greene's unjust enrichment claim is entirely premised on the alleged use of voice recordings to develop *NotebookLM* without compensation. Compl., Count 4 ¶ 2. Put simply, Greene alleges that Google copied Greene's sound recordings and "creative expression," used them to create derivative works, and monetized the result without a license. *Id.* ¶ 12; *see also id.* ¶ 72 (alleging the creation of a "competing product derived from" the sound recordings). That is the core of a copyright claim. *See Laws*, 448 F.3d at 1141 (claims concerning ads capitalizing on a plaintiff's likeness preempted if they involve the "unauthorized use of a copyrighted work"); *Daniher*, 2022 WL 1470480, at *5 (unjust enrichment claim preempted because it was "solely predicated on Pixar's alleged 'benefit'" from use of the work without compensation). Greene cannot evade preemption through artful pleading or conclusory allegations. *See Best Carpet*, 90 F.4th at 972–73; *Firoozye*, 153 F. Supp. 2d at 1128.

> **B.  Preemption of even one claim is sufficient to confer jurisdiction.**

Even if the Court were to determine that one, but not all, of Greene's claims is preempted, that would be sufficient to confer original jurisdiction. *See NTD Architects,* 2012 WL 2498868, at *8 (denying remand based on preemption of a single claim for conversion). As to the remaining, non-preempted claims, the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 since each claim is premised on Google's alleged use of Greene's sound recordings to develop *NotebookLM*. Compl. ¶ 1; *see also supra* Section IV(A)(1). Because the claims are "so related . . . that they form part of the same case or controversy under Article III," the Court should exercise supplemental jurisdiction over any non-preempted claims (if any). 28 U.S.C. § 1367(a).

## V.  CONCLUSION

For the foregoing reasons, Greene's Motion should be denied.

DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. 3:26-cv-01773-CRB

6194918

Dated:  May 13, 2026

KEKER, VAN NEST & PETERS LLP

By:  */s/ Sarah Salomon*
MICHELLE YBARRA
SARAH SALOMON
SANA A. SINGH
ELEANOR F. BROCK
YEGINA WHANG

Attorneys for Defendants
GOOGLE LLC and ALPHABET INC.

16
DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. 3:26-cv-01773-CRB

6194918