KEKER, VAN NEST & PETERS LLP
MICHELLE YBARRA - # 260697
mybarra@keker.com
SARAH SALOMON - # 308770
ssalomon@keker.com
SANA A. SINGH - # 342614
ssingh@keker.com
ELEANOR F. BROCK - # 346681
ebrock@keker.com
YEGINA WHANG - # 350287
ywhang@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants
GOOGLE LLC and ALPHABET INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID L. GREENE,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>Defendants. | Case No. 3:26-cv-01773-CRB<br><br>**REPLY IN SUPPORT OF DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS**<br><br>Dept:        Courtroom 6 – 17th Floor<br>Judge:      Hon. Charles R. Breyer<br><br>Complaint Filed:        January 23, 2026<br><br>Action Removed:        March 2, 2026<br><br>Trial Date:  None Set |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT............................................................................................................... 2

    A.    Greene's claims are preempted. ....................................................................... 2

        1.    Greene's Opposition confirms his claims hinge on voice recordings......... 2

        2.    Greene seeks to vindicate rights equivalent to copyright.......................... 4

    B.    Greene fails to address alternative explanations. ............................................. 5

    C.    Greene fails to state a claim for relief............................................................. 7

        1.    Greene fails to state claim under section 3344. ........................................ 7

        2.    Greene fails to state a common law right of publicity claim...................... 9

        3.    Greene does not plead a UCL claim. ....................................................... 13

        4.    Greene does not state a claim for unjust enrichment or quasi-contract. ................................................................................................. 14

    D.    Greene has not shown Alphabet Inc. is a proper defendant................................ 15

III.  CONCLUSION.......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ali v. Intel Corp.*,
   2018 WL 5734673 (N.D. Cal. 2018) ................................................................................... 11

*Aligo v. Time-Life Books, Inc.*,
   1994 WL 715605 (N.D. Cal. 1994) .................................................................................. 7, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 1, 6, 10

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................................. 15

*Bartz v. Anthropic PBC*,
   No. 4:24-cv-05417 (N.D. Cal. 2024) ................................................................................... 3

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 6

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ............................................................................................. 13

*Boyd v. SunButter, LLC*,
   762 F. Supp. 3d 931 (C.D. Cal. 2025) ............................................................................... 14

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ............................................................................... 9

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ............................................................................................... 5

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ............................................................................................... 3

*Firoozye v. Earthlink Network*,
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) ............................................................................... 5

*Galang v. Wells Fargo Bank, N.A.*,
   2018 WL 6201952 (E.D. Cal. Nov. 28, 2018) ................................................................... 11

*In re Google Generative AI Copyright Litig.*,
   809 F.Supp.3d 903 (N.D. Cal. 2025) ................................................................................... 6

*Hammerling v. Google, LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................. 15

ii

*Harper & Row Publishers, Inc. v. Nation Enterp.*,
  471 U.S. 539 (1985)......................................................................................................... 5

*Harvey v. Netflix, Inc.*,
  2024 WL 4536639 (C.D. Cal. Sept. 27, 2024)...................................................................... 12

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
  761 F.3d 1027 (9th Cir. 2014)......................................................................................... 2

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016) ............................................................................. 14

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) .................................................................................. 13

*Johnson v. Amazon.com Inc.*,
  2025 WL 949495 (W.D. Wash. 2025).................................................................................. 10

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
  617 F.3d 1146 (9th Cir. 2010)........................................................................................... 3

*Kadrey v. Meta*,
  No. 3:23-cv-03417 (N.D. Cal. 2025) ................................................................................. 3

*Kiss v. Federal Deposit Ins. Corp.*,
  2026 WL 639956 (N.D. Cal. 2026) .............................................................................. 5, 6

*Koehler v. Litehouse, Inc.*,
  2012 WL 6217635 (N.D. Cal. 2012) ................................................................................ 11

*Laws v. Sony Music Ent., Inc.*,
  448 F.3d 1134 (9th Cir. 2006)..................................................................................... *passim*

*Lehrman v. Lovo, Inc.*,
  790 F. Supp. 3d 348 (S.D.N.Y. 2025) ................................................................................ 8

*Marshall v. Procter & Gamble Co.*,
  2025 WL 2662863 (N.D. Cal. 2025) ................................................................................... 6

*Martinez v. ZoomInfo Techs. Inc.*,
  2022 WL 1078630 (W.D. Wash. 2022)............................................................................... 12

*Mattel, Inc. v. Bryant*,
  441 F. Supp. 2d 1081 (C.D. Cal. 2005) ............................................................................... 2

*Midler v. Ford Motor Co.*,
  849 F.2d 460 (9th Cir. 1988)...................................................................................... *passim*

*O'Brien v. PopSugar Inc.*,
  2019 WL 462973 (N.D. Cal. 2019) ..................................................................................... 3

iii

*ProconGPT, Inc. v. Star Sensor LLC*,
   2011 WL 5975271 (N.D. Cal. 2011) ...............................................................................13, 14

*Schneider v. Cal. Dept. of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ........................................................................................ 11

*Stapleton v. JPMorgan Chase Bank, N.A.*,
   779 F. Supp. 3d 1059 (N.D. Cal. 2025) .......................................................................... 14

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998).......................................................................................................... 15

*Upper Deck Co. v. Panini Am., Inc.*,
   469 F. Supp. 3d 963 (S.D. Cal. 2020)............................................................................. 12

*Vaughan v. Quicken Loans, Inc.*,
   2025 WL 2104273 (C.D. Cal. 2025) ............................................................................... 14

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992)..................................................................................4, 6, 10

*Whiteside v. Chosen Foods, LLC*,
   796 F. Supp. 3d 667 (S.D. Cal. 2025).............................................................................. 11

*Young v. Greystar Real Estate Partners, LLC*,
   2019 WL 4169889 (S.D. Cal. 2019)................................................................................ 10

**State Cases**

*California Med. Assn. v. Aetna Health of California Inc.*,
   14 Cal. 5th 1075 (2023) .................................................................................................. 13

*Drum v. San Fernando Valley Bar Association*,
   182 Cal. App. 4th 247 (2010)........................................................................................... 13

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996)......................................................................................2, 3, 8

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008)........................................................................................... 13

*Johnson v. Harcourt, Brace, Jovanovich, Inc.*,
   43 Cal. App. 3d 880 (1974)............................................................................................... 9

*People v. Licas*,
   41 Cal. 4th 363 (2007) ...................................................................................................... 7

**Federal Statutes**

17 USC § 106(2)....................................................................................................................... 5

iv

**State Statutes**

Cal. Civ. Code § 3344.................................................................................................1, 3, 7, 8, 9

Cal. Civ. Code § 3344.1.......................................................................................................... 7

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

## I.    INTRODUCTION

Plaintiff David Greene's ("Greene") Opposition only underscores why Defendants' Motion to Dismiss should be granted. *First*, Greene's Opposition confirms that his claims hinge entirely on Google's alleged use of copyrightable voice recordings and are thus preempted by the Copyright Act. Greene now concedes that his right of publicity claims center on Google's alleged copying and use of those recordings –"memoriz[ing]" them, Opp. at 9; using that "copyrighted source material" to generate outputs that "sound like Mr. Greene," *id.* at 2; and even regurgitating exact copies of those recordings to users, *id.* at 8. Mr. Greene's UCL and "quasi contract" claims rest on the same conduct. Greene identifies no "extra element" that would distinguish any of his claims from a copyright claim. By Greene's own characterization, this is a copyright case, and his state-law claims are therefore preempted.

*Second*, Greene failed to adequately plead facts to support his causes of action. Greene accuses Google of "ignor[ing]" his allegations. *See, e.g.*, Opp. at 10–12. But each of the "allegations" Greene points to is "no more than [a] conclusion[]" and is thus "not entitled to the assumption of truth," or sufficient to state a claim on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see, e.g.*, Opp. at 10 (arguing he pleaded distinctiveness under the common law right of publicity because his Complaint describes his voice as "distinctive"). That these bare assertions were the only "facts" Greene could come up with only further illustrates why his allegations are deficient. With these conclusory allegations removed, *Iqbal*, 556 U.S. at 679, there is nothing left to sustain Greene's claims.

At most, Greene has alleged that his voice and the *NotebookLM* voice "sound similar." But that is not sufficient to plead any of Greene's claims, which require allegations that Google actually used and profited from Greene's voice (for section 3344); that Google intentionally imitated Greene's "distinctive" and "well-known" voice and users actually believed it was his (for common law right of publicity); that Google engaged in fraud or anti-competitive activity (for Greene's UCL claims); and that Google unjustly retained a benefit from Greene through coercion, fraud, or other falsehoods (for Greene's quasi contract claim). Worse, Greene has no answer for Google's more plausible alternative explanation: that two voices may simply sound alike, without

1

copying or imitation. It is hardly unusual for two speakers to sound similar, especially in a podcast setting where vocal archetypes are common. All Greene's claims should be dismissed.

## II.    ARGUMENT

### A.    Greene's claims are preempted.

Greene's arguments against preemption largely re-hash the arguments made in his Motion for Remand. ECF No. 23. Google addresses these points at length in its Opposition to that motion. ECF No. 29. In short, Greene's claims are preempted because (1) the "works" at issue are voice recordings Greene claims Google used to train *NotebookLM*, which clearly fall within the subject matter of copyright, and (2) the use of those recordings is the only mechanism for the "identity" misappropriation alleged, meaning Greene asserts rights equivalent to those protected under the Copyright Act. Greene's Opposition to this Motion only further confirms both points.[1]

### 1.    Greene's Opposition confirms his claims hinge on voice recordings.

Courts have made clear that right of publicity claims "fall within the subject matter of copyright" if they center on the use of copyrightable "performances put on [a tangible medium]," such as a film or recording. *Fleet v. CBS, Inc.,* 50 Cal. App. 4th 1911, 1919 (1996); *see also, Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1141 (9th Cir. 2006) (same). Greene's articulation of his claims in Opposition confirms that is the case here. He contends that *NotebookLM* "contains 'memoriz[ed]' voice recordings of Mr. Greene," Opp. at 9; that the model "may output actual copies of Mr. Greene's voice," Opp. at 9; and, as to his "digital replica" claim, that the "references to copyrighted source material" and "training" in his Complaint "explain ***how and why*** Defendants' outputs sound like Mr. Greene." Opp. at 2 (emphasis in original). Those are copyright theories, which tellingly mirror Greene's counsel's copyright allegations in other suits

---

[1] Plaintiff raises whether he is entitled to "jurisdictional discovery" to determine whether copyright preemption applies. Greene does not need such discovery because, as a general rule, the examination of extra-pleading material is not permitted for complete preemption analysis. *See Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1092–93 (C.D. Cal. 2005). Plaintiff claims *Mattel* is "bad law" under *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.,* 761 F.3d 1027 (9th Cir. 2014), but the cases do not conflict. *Mattel* states the general rule against consideration of outside material, while *Hawaii ex rel Louie* articulates an exception for cases where preemption hinges on a disputed fact. Preemption does not hinge on disputed facts here; indeed, Greene filed his Motion for Remand *without seeking jurisdictional discovery*. Thus, *Mattel* applies.

against AI services. *See, e.g., Kadrey v. Meta,* No. 3:23-cv-03417 (N.D. Cal. Jan. 21, 2025), ECF No. 407 at ¶ 3 (copyright complaint alleging that Meta's model "memoriz[ed]" training data and has a "tendency to output copies of [] training data"); *see also Bartz v. Anthropic PBC*, No. 4:24-cv-05417 (N.D. Cal. Dec. 4, 2024), ECF No. 70 at ¶ 27 (copyright complaint alleging that Anthropic's Claude model was "built on the work of thousands of authors, meant to mimic the syntax, style, and themes of the copyrighted works on which it was trained").

Greene's Complaint and Opposition confirm that all of his claims hinge on Google's alleged use of sound recordings. *Fleet* and *Laws* are therefore directly applicable and require preemption. *Fleet*, 50 Cal. App. 4th at 1919; *Laws*, 448 F.3d at 1141. Greene's attempts to distinguish *Fleet* are unpersuasive. First, he claims *Fleet* is limited to cases where a plaintiff sues to prevent a copyright holder from distributing a work. The Ninth Circuit has expressly rejected that reading. *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154 (9th Cir. 2010). Second, Greene argues this case is more like *Downing v. Abercrombie & Fitch* and *O'Brien v. PopSugar, Inc* than *Fleet*. But, the claims in *Downing* survived preemption because the defendant went beyond mere use of the copyrighted photograph at issue – it published the photo in an ad campaign, identified the plaintiffs by name, and sold the same t-shirts worn by plaintiffs in the photo. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1000 (9th Cir. 2001). The same is true of *O'Brien*, where the plaintiff alleged both use of copyrighted photographs *and* use of the plaintiff's name and likenesses. *O'Brien v. PopSugar Inc.*, 2019 WL 462973 at *2–3 (N.D. Cal. Feb. 6, 2019). Greene makes no such allegations here.

In an effort to fit with *Downing* and *O'Brien*, Greene now argues that he has alleged exploitation of "likeness" and "identity," rather than merely his voice. Opp. at 5, 7–8. This argument fails as a matter of law for Greene's section 3344 claim. Section 3344 claims must fall into one of the five identity categories listed in the statute; there is no free-floating "identity" category. *Midler v. Ford Motor Co.,* 849 F.2d 460, 463 (9th Cir. 1988) (dismissing section 3344 claim because it was not covered by the statute). Moreover, "[t]he term 'likeness'" in section 3344 "refers to a visual image[,] not a vocal imitation." *Id.* As for Greene's other claims, Greene's attempt to broaden his theory of liability is belied by the Complaint, which contains no

allegations of misappropriation beyond Google's alleged use of his voice and concedes that Google never used Greene's name or "stated that the AI host was [] Greene." Compl. ¶ 60. Greene points to the Complaint's occasional use of the terms "likeness" and "identity." Opp. at 4. But these terms are boilerplate, and Greene's citations confirm he merely uses them to refer to Google's alleged vocal misappropriation:

- "Google **sought to replicate Mr. Greene's distinctive voice**" and now "freely profits from [his] **reputation and personality**." Compl. ¶ 3 (emphasis added).

- "Media personalities are typically and consistently paid a negotiated amount **for the use of their voices**. The negotiated amount is a function of the **actor's name, brand value**." Compl. ¶ 8 (emphasis added).

- "Defendants received a benefit from Mr. Greene by appropriating and exploiting the commercial value of Mr. Greene's distinctive **voice and persona** to develop, promote, and sell NotebookLM access." Compl. Count IV ¶ 2 (emphasis added).

- Google had "knowledge of **Mr. Greene's vocal recognizability**, and with the intent to confuse, mislead, and capitalize on the commercial value of **Mr. Greene's identity and persona**." Compl. ¶ 66 (emphasis added).

### 2. Greene seeks to vindicate rights equivalent to copyright.

Greene concedes that his publicity claims (and, by extension, his other claims) are preempted unless they contain an "extra element which changes the nature of the action," Opp. at 6. But he articulates no such "extra element" in his Complaint or Opposition.

Again, Greene tries to frame this case as about his "likeness" and "identity," rather than just his voice. Opp. at 6–7. This fails for the same reason here as articulated above: the Complaint does not allege misappropriation of anything other than Greene's voice from sound recordings.

Greene's reliance on *Midler* and *Waits* also fails. Those cases did not turn on the defendant's use of sound recordings; instead, they involved deliberate voice imitation by a human voice actor. *Midler*, 849 F.2d at 463; *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1100 (9th Cir. 1992). The voice imitation supplied an extra element to defeat preemption because "[a] voice is not copyrightable." *Midler*, 849 F.2d at 462; *Waits*, 978 F.2d at 1100. In contrast, Greene *does not* allege voice imitation by a voice actor (thus, missing the extra element) and *depends entirely* on Google's alleged use of voice recordings to train and generate *NotebookLM* outputs. The Ninth Circuit distinguished *Midler* on this ground in *Laws*, finding preemption where the plaintiff

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

alleged only that the defendant "used [plaintiff's] recording itself," rather than also using a voice actor to "imitat[e]" plaintiff. *Laws,* 448 F.3d at 1140-41. It was critical, in other words, that the defendant did not simply use "a copyrighted vocal performance," unlike here. *Id.* at 1141.

Greene also cannot distance himself from the Complaint's allegation that *NotebookLM* outputs are "derived from [Greene's] works" and thus constitute derivative works under the Copyright Act. Opp. at 7 (citing Compl. ¶¶ 68, 72). Greene now claims he used the term "work" to refer to his "persona," rather than copyrighted recordings, as evidenced by the fact "none" of the elements allegedly contained in *NotebookLM* outputs (including Greene's "editorial style," "journalistic voice," and "creative expression") "are copyrighted or even copyrightable." Opp. at 7. Greene's reading is strained. His allegation that Google created podcasts "derived" from his "works" means what it says: that he alleges Google used sound recordings to create derivative works. That is a copyright claim, down to Greene's use of copyright-specific terminology. *See, e.g.*, 17 USC § 106(2) (copyright owners have exclusive right to "prepare derivative works based upon the copyrighted work"). Greene alleges that Google "use[d]" his "performance[] and words," which are clearly copyrightable. Moreover, to the extent "editorial style," "journalistic voice," and "creative expression" are captured in a tangible medium – as in the voice recordings here – that is the core of a copyright claim. *See Harper & Row Publishers, Inc. v. Nation Enterp.*, 471 U.S. 539, 547 (1985) (copyright applies to "those aspects of the work – termed 'expression' – that display the stamp of the author's originality"); *Corbello v. Valli*, 974 F.3d 965, 976 (9th Cir. 2020) ("style and presentation" are protected by copyright). But in any event, preemption does not depend on whether work at issue is "copyrightable;" it depends on whether the work falls within the subject matter of copyright and the plaintiff asserts rights equivalent to copyright. *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001) (Breyer, J.). As explained above, Greene's claims are wholly premised on misappropriation of copyrightable recordings.

### B.    Greene fails to address alternative explanations.

If an alternative explanation renders the plaintiff's explanation "implausible," the plaintiff's complaint must be dismissed. *See, e.g.*, *Kiss v. Federal Deposit Ins. Corp.*, 2026 WL

639956, at *9 (N.D. Cal. Jan. 30, 2026) (dismissing claim based in part on existence of alternative explanations); *Marshall v. Procter & Gamble Co.*, 2025 WL 2662863, at *5 (N.D. Cal. Sept. 17, 2025) (same). Google does not concede that the *NotebookLM* voice sounds like Greene. But, even assuming it does, the natural alternative explanation is that the *NotebookLM* voice sounds similar because it draws on vocal characteristics common to radio/podcast vocal archetypes and uses common filler words – not because of any copying, or intentional imitation. *See* Mot. at 14.

Greene does not rebut this alternative explanation. Nor could he rebut it. He pleads no facts that show Google intended to use his voice or exclude the alternative explanation that he might just happen to sound somewhat similar to the *NotebookLM* voice. *Contrast Midler*, 849 F.2d at 461 (plaintiff tried to hire Midler herself first and then hired her back-up singer to "sound as much as possible like the Bette Midler record"); *Waits*, 978 F.2d at 1097 (voice actor was recommended "as someone who did a good Tom Waits imitation"). The only specific "similarity" the Complaint alleges is NotebookLM's use of "filler words" like "uhms" and "aahs" – which Greene concedes are part of the "typical" "cadence" for radio hosts. Compl. ¶ ¶ 14, 62.

Rather than address this analysis, Greene instead asserts that the alternative explanation inquiry is limited to securities cases. Opp. at 3 n. 3. That is wrong. This inquiry flows from *Twombly* and *Iqbal*'s general plausibility standard, which applies across all civil claims. *Iqbal*, 556 U.S. at 682 (evaluating an "obvious alternative explanation" for plaintiff's claims in an unconstitutional discrimination and confinement case) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 568–69 (2007)). Courts in this district routinely apply this analysis outside the securities context, including in intellectual property cases. *See, e.g.*, *Kiss*, 2026 WL 639956, at *9; *Marshall*, 2025 2662863 at *5; *In re Google Generative AI Copyright Litig.*, 809 F.Supp.3d 903, 910 (N.D. Cal. 2025) (articulating alternative explanation standard in copyright case).

The possibility of two podcast-host voices sounding coincidentally similar is obvious. It is also more plausible than Greene's explanation, which (as discussed below) depends entirely on conclusory allegations about Google's behavior, none of which have even basic factual support. *Contrast Midler*, 849 F.2d at 461 (identifying proof of defendant's intent to imitate plaintiff); *Waits*, 978 F.2d at 1097 (same). This alone is enough to dismiss Plaintiff's claims.

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

### C.    Greene fails to state a claim for relief.

#### 1.    Greene fails to state claim under section 3344.

Greene's section 3344 claim fails because he has not alleged that Google "used" his voice as defined in the statute, or that there is a direct connection between alleged use and commercial benefit. *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2, *2 n.2 (N.D. Cal. Dec. 19, 1994).

**Use.** Greene admits this is a voice imitation case. Opp. at 8 (arguing that *NotebookLM* "can generate *imitation outputs closely matching [Greene's] voice*") (emphasis added). His statutory claim is thus foreclosed by *Midler*, which bars section 3344 claims for voice imitation. None of Greene's arguments for distinguishing *Midler* are convincing.

*First*, Greene argues that the imitation at issue here – a digital replica – is different from human imitation and thus falls outside *Midler*. Greene points to no case law making such a distinction under section 3344. Greene also concedes that the California Legislature declined to amend section 3344 to prohibit digital replicas, but he argues this decision "may easily indicate that [the legislature] believes digital replicas are already [covered by the statute]." Opp. at 9 n. 6. Glaringly, Greene ignores that the Legislature *did amend* section 3344.1, the right-of-publicity statute for deceased individuals. Section 3344.1 protects the same exact categories of identity as section 3344 ("name, voice, signature, photograph, or likeness"), and the Legislature amended it to specifically prohibit "digital replicas of a deceased personality's voice or likeness." Cal. Civ. Code § 3344.1(a)(2)(A)(ii). The Legislature considered, and declined to enact, a similar prohibition on "digital replicas" in section 3344. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." *People v. Licas*, 41 Cal. 4th 363, 368 (2007). The Legislature's decision to add "digital replicas" to section 3344.1, but not section 3344, confirms what *Midler* already made clear: section 3344 does not reach digital replicas.

Greene next appeals to section 3344's "plain language" and asks the Court to follow a New York district court's interpretation of New York's publicity statute. Opp. at 9 (citing *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 382 (S.D.N.Y. 2025)). Neither argument is

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

persuasive. *Midler* already interpreted the term "voice" in section 3344 to mean plaintiff's literal voice, not imitations (digital or otherwise). *Midler*, 849 F.2d at 463 ("The defendants did not use Midler's name or anything else . . . prohibited by the statute. The voice they used was [the voice actor's], not hers."). New York's publicity statute is also easily distinguishable. "New York courts [have] held that digital replicas of living persons—at least ones with a visual component— were already covered" by the language of the New York statute. *Lehrman*, 790 F. Supp. at 381. There is no such case law in California, and the Legislature has left *Midler* in place.

**Second**, Greene claims that, unlike the voice actor in *Midler*, Google "used" Greene's "recordings . . . for much more than reference material, including training and fine-tuning." Opp. at 9. Greene offers no explanation for what the distinction is between "training" on a recording and using a recording for reference material, or why this distinction matters for liability under *Midler*. It does not. In *Midler*, the "record of 'Do You Want To Dance' was first played to [the voice actor]," and she was told to 'sound as much as possible like the Bette Midler record.'" 849 F.2d at 461. The *Midler* court did not consider that training a "use" within the ambit of section 3344; Midler's claim was for vocal imitation. Here too, Greene alleges that *NotebookLM* is "trained using Mr. Greene's voice" and then "take[s] new texts and convert[s] them into speech . . . calibrated to replicate Mr. Greene's [voice]" – *i.e.*, a digital replica. As in *Midler*, Google's alleged training on Greene's recordings is not cognizable "use" within section 3344.[2]

**Third**, Greene argues that, in addition to imitating him, *NotebookLM* "memoriz[ed]" and "may output actual copies" of Greene's recordings. Opp. at 9. This is a textbook copyright claim and thus preempted, as discussed above. *Fleet*, 50 Cal. App. 4th at 1921; *Laws*, 448 F.3d at 1141.

**Direct connection**. Greene's section 3344 claim further fails because he has not alleged a sufficiently direct connection between Google's alleged "use" and a commercial benefit. *Aligo,* 1994 WL 715605, at *2. Greene's Opposition does not identify any factual allegations establishing such a connection. Nor does he address his own allegations that *NotebookLM*'s

---

[2] And, crucially for preemption purposes, the use of Greene's recordings in training is the sole misappropriation he alleges. Thus, unlike in *Midler*, which alleged the use of a soundalike, Mr. Greene's failure to allege an "extra element" beyond the training on his recordings means his claims are preempted in addition to failing under section 3344.

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

commercial success is driven by its "breakthrough" technology and AI-powered research functions, rather than the voices in the platform. Mot. at 21; Compl. ¶¶ 5, 37. Greene instead relies on (1) the fact that Google offers a paid product (Google One AI Premium tier) and generates revenue from it, and (2) conclusory allegations about Google's "financial success." Opp. at 10. These allegations are insufficient as a matter of law.

Greene rejects the holding of *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 882-83, 895 (1974), which states that the alleged use must be a "substantial factor" in sales. Opp. at 9. Greene offers no basis for this rejection or alternative standard. He instead argues that the existence of a monetized product alone (here, Google One AI Premium tier) satisfies the "direct connection" requirement. That is not the rule. Section 3344 itself forecloses this reading by stating that the mere inclusion of one of the enumerated elements of identity "in a commercial medium" that is "commercially sponsored or contains paid advertising" is not sufficient. Cal. Civ. Code § 3344(e). Otherwise, any use embedded anywhere in a commercial product would automatically qualify, and the direct connection requirement would be meaningless.

As for Greene's claims that Google used Greene's voice to sell Google One Premium tier, or otherwise "leveraged" his voice, these are conclusory assertions, not facts supporting the direct connection requirement. Greene does not explain ***how*** Google's alleged use of his voice is connected to any advertising, promotion, or revenue generation – only that the products incorporating it are sold. This is insufficient.[3] Greene argues that direct connection is a "question of fact," Opp. at 10. But that does not exempt Greene from plausibly alleging such facts.

### 2. Greene fails to state a common law right of publicity claim.

Greene's Opposition only identifies conclusory, boilerplate allegations on each element of his common law right of publicity claim. As such, his common law claim also fails. *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1093–94 (N.D. Cal. 2011) (listing the elements).

**Distinctive.** Greene argues he has pleaded distinctiveness because his Complaint states that his voice is "distinctive" and "unique." Opp. at 10. These are conclusory recitations of claim

---

[3] To the extent Greene relies on *Spotify's* profits or "app engagement," that also does not satisfy the direct connection requirement. The relevant connection is between the defendant's alleged use and its profits.

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

elements, not factual allegations. *Iqbal*, 556 U.S. at 664 ("legal conclusions . . . must be supported by factual allegations"). Greene's deficiency on this element is particularly evident when compared to the distinctiveness allegations in *Midler* and *Waits*. In *Waits*, for example, the record showed plaintiff had "a raspy, gravelly singing voice, described by one fan as 'like how you'd sound if you drank a quart of bourbon, smoked a pack of cigarettes and swallowed a pack of razor blades. . . . Late at night. After not sleeping for three days.'" *See Waits,* 978 F.2d at 1097; *see also Midler*, 849 F.2d at 461 (defendants had previously approached Midler because they wanted her voice, specifically). Greene does not describe his voice, much less identify unique attributes like those discussed in *Waits*. As discussed in Defendants' Motion, courts routinely dismiss publicity claims where the alleged identifying traits are generic or non-unique. *See, e.g.*, *Young v. Greystar Real Estate Partners, LLC*, 2019 WL 4169889 (S.D. Cal. Sept. 3, 2019); *Johnson v. Amazon.com Inc.*, 2025 WL 949495, at *3 (W.D. Wash. Mar. 27, 2025).

**Well-known**. Greene argues he has pleaded his voice is well-known because his Complaint states that he is "one of the most well-known and respected radio and podcasting voices of his time." Opp. at 10. Again, this is a legal conclusion, unsupported by facts. Greene's "awards" and "accomplishments," Opp. at 10, also do not help him here. These allegations might indicate that Greene's journalism or persona is well-known; but they do not show his ***voice*** is well-known, which is the relevant question. *See Midler*, 849 F.2d at 463; *Waits*, 978 F.2d at 1102. Just because a person is well known does not mean his voice is well known.

**Actual confusion.** Greene argues he has adequately alleged listeners "believed he performed [the *NotebookLM*] outputs," citing a purported "forensic analysis" and "public media reports supporting the claim that people believe he is involved." Opp. at 10. Not so.

***First***, neither of the "media reports" Greene cites show that "people believe he is involved" in *NotebookLM*. One article states that the *NotebookLM* voice "has the flow and cadence of your typical NPR explainer," Compl. ¶ 62 – in other words, it could be anyone, and the article does not refer to Greene at all. The other article observes that the *NotebookLM* voice "sound[s] eerily like former 'Morning Edition' host David Greene" but expressly refers to the voice as an "imposter," Compl. ¶ 63, confirming that the writer understood it was not Greene. At

10

most, these "media reports" reflect perceived resemblance, not a mistaken belief that Greene's identity was used. Such allegations are insufficient to plead actual confusion.[4] Again, *Midler* provides a helpful benchmark. There, multiple people told Midler that the imitation "sounded exactly" like her, such that they thought it was her voice, and an unrelated third party signed an affidavit saying the same. *Midler*, 849 F.2d at 461–62. There are no similar allegations here. Greene tries to re-frame the "typical NPR explainer" remark as demonstrating his "prolificness" and claims the Court must construe the comment his way on a motion to dismiss. Opp. at 10 n. 7. The Court need not adopt Greene's manufactured interpretation, advanced for the first time in his Opposition. *See, e.g., Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1997 n.1 (9th Cir. 1998) (plaintiff cannot use opposition brief to clarify "ambiguous" allegations).

**Second**, the anonymous "forensic" analysis attached to Greene's complaint does not plausibly plead actual confusion. Greene's "forensic" analysis does not contain any *facts* – only opinion. It thus cannot provide the requisite *factual basis* to show users actually believe the *NotebookLM* voice belongs to Greene. *See, e.g., Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (refusing to consider expert opinion that makes "no statements of fact" on motion to dismiss); *Galang v. Wells Fargo Bank, N.A.*, 2018 WL 6201952, at *5 n. 3 (E.D. Cal. Nov. 28, 2018), *aff'd*, 805 F. App'x 541 (9th Cir. 2020) ("conclusory statements fare no better when packaged in a third-party report than [] in a plaintiff's complaint"). Even if Greene's "forensic" analysis could be considered "factual," it does not sufficiently support his claims. Greene's "forensic" analysis purports to show that Google "trained on" Greene's voice, not to measure similarity between the voices or user confusion. Compl. ¶ 59. Greene also does

---

[4] Greene also cites a Washington Post article, which was not included in his Complaint. *See* Opp. at 10 (citing ECF No. 24-1). This is improper. "[R]eview of a complaint under Rule 12(b)(6) is limited to the pleading," unless the outside material is judicially noticeable or falls within the incorporation-by-reference doctrine. *Whiteside v. Chosen Foods, LLC*, 796 F. Supp. 3d 667, 673 (S.D. Cal. 2025). Greene sought judicial notice of this Washington Post article in connection with his Motion for Remand. *See* ECF No. 24-1. But he has not sought judicial notice of it here; even if he had, it would not be a proper subject of judicial notice. Greene offers this article for the truth of what it contains: alleged evidence of "people mistaking the *NotebookLM* voice for Mr. Greene." Opp. at 10. Courts "do not take judicial notice of newspaper articles for the truth of the contents of the articles." *Ali v. Intel Corp.*, 2018 WL 5734673 at *3 (N.D. Cal. Oct. 31, 2018). This particular article was also written after this lawsuit was filed and Greene publicly claimed the voice was his, limiting its usefulness as an arbiter of confusion.

11

not address the obvious methodological issues raised in Defendants' Motion, thus conceding the point. *See* Mot. at 11 n. 5 (noting that the "control" comparators are individuals of markedly different races, genders, and geographic origins than Greene). At best, Greene's "forensic" analysis shows his voice is more similar to the *NotebookLM* voice than the comparators Greene cherry-picked to the point of self-parody. But that is not sufficient, and also fails to address the obvious alternative explanation Google discusses above and to which Greene has no response.

**Benefit.** Greene claims he has adequately pleaded benefit to Google because he alleges that his voice helped Google "'create familiarity,'" "'maximize profits' from that familiarity," and "achieve greater financial success." Opp. at 10. Again, Greene's pleading is conclusory. He does not provide facts showing "familiarity" or indicating a causal link between familiarity and revenue. *See Harvey v. Netflix, Inc.*, 2024 WL 4536639, at *13 (C.D. Cal. Sept. 27, 2024), *appeal filed*, No. 24-6151 (9th Cir. Oct. 9, 2024) (plaintiff must show direct benefit). He also entirely fails to address Defendants' argument that *NotebookLM*'s technological innovations provide a more plausible explanation for the product's success. Mot. at 14. Nor does he allege that Google would not be in the same position had it chosen a different voice actor than it selected.

**Resulting Injury.** Greene claims damage from "diverted resources and delayed projects" due to the litigation; "injury from competition with AI podcasts;" and "diminished licensing value due to false association." Opp. at 11–12. Greene's alleged "diverted resources" are a litigation cost, not harm resulting from Google's alleged underlying conduct. Nor does Greene provide any factual basis for his claims of "injury from competition" or "diminished licensing value" (*i.e.* licenses or royalties he has lost). As explained in Defendants' motion, such "speculative allegations" of future harm are "insufficient to state claim." *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 982–83 (S.D. Cal. 2020). Greene's own authority, *Martinez v. ZoomInfo Techs. Inc.*, only highlights the deficiencies in his allegations. There, the plaintiff alleged concrete facts to support her injury claims, including alleging that the defendant (Zoom) had "acknowledged the commercial value" of the identity information at issue by "refer[ing] to this information as 'an integral part of [its] products and services." 2022 WL 1078630, at *3-4 (W.D. Wash. Apr. 11, 2022). Greene makes no such allegations here.

6204281

### 3.     Greene does not plead a UCL claim.

Neither Greene's Complaint nor his Opposition identifies facts sufficient to establish UCL standing, or to plead a violation of any of the UCL's three prongs.

**Standing**. Greene fails to identify any concrete, non-hypothetical economic harms stemming from Google's alleged UCL violations; nor does he adequately plead causation. Mot. at 12; *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013) (plaintiff must plead "lost money or property as a result of the unfair competition" to have UCL standing).

Greene's Opposition does not address either of these points. Greene identifies no facts showing causation. On harm, he merely identifies yet more conclusory allegations of injury – this time, "competition with AI podcasts," "diminish[ed] value" of his voice, and "diverted time" to "investigate and respond to Defendants' unauthorized use of his voice." Opp. at 12. An individual's diverted time due to alleged unfair competition does not qualify as an economic injury for UCL purposes. *Cf. California Med. Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 1095 n.7 (2023) (collecting cases). Greene's "competition" and "diminish[ed] value" theories are likewise entirely hypothetical. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (hypothetical injuries do not satisfy the UCL's economic-loss requirement); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 853 (2008), *as modified* (Jan. 28, 2008) (same). As in *Drum v. San Fernando Valley Bar Association*, Greene has "not allege[d] that he lost or expended or was denied any money or property" as a result of Defendants' alleged conduct, and thus lacks standing under the UCL. 182 Cal. App. 4th 247, 252 (2010).

**Unlawful.** Greene agrees that his unlawful UCL theory rises and falls with his publicity claims. Opp. at 12. This theory thus fails for the reasons described in Sections 2(C)(1)-(2) above.

**Unfair.** Greene concedes that he must identify harm to competition or a violation of the anti-trust laws to plead unfairness under the UCL. Opp. at 12. He argues Google's conduct was "anti-competitive" because Google threatens his ability to compete and contract with third parties. Opp. at 12. But "[h]arm to a competitor is not the same as harm to competition," and is insufficient to plead unfairness. Mot. at 13 n. 6 (citing *ProconGPT, Inc. v. Star Sensor LLC*, 2011 WL 5975271, at *3 (N.D. Cal. Nov. 29, 2011)). Greene does not distinguish *ProconGPT* or cite

13

6204281

any authority to the contrary. His half-hearted effort to reframe his alleged direct injury as harm to the "market for lawful voice licensing," generally, should likewise be rejected. Opp. at 12–13. As the plaintiff in *ProconGPT*, Greene has (at most) alleged injury only to himself and thus cannot plead a UCL claim based on unfairness. *ProconGPT,* 2011 WL 5975271 at *3.

**Fraudulent.** Greene's Opposition does not address his failure to plead facts showing that Google misled consumers by failing to disclose the *NotebookLM* voice was engineered to resemble Greene, *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 941 (C.D. Cal. 2025), or that Google had a duty to disclose in the first place. *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (omissions only actionable only where the defendant had a duty to disclose). He instead insists that Google's alleged fraud is an affirmative statement, rather than an omission, and thus that a duty to disclose is not required. Opp. at 13. This argument is defeated by the very allegation Greene identifies in his Opposition, which claims Google acted fraudulently by making "generalized statements about training on 'publicly available' data *without disclosure* that the male AI host was engineered to imitate Mr. Greene's distinctive voice." Opp. at 13 (emphasis added).

### 4.    Greene does not state a claim for unjust enrichment or quasi-contract.

This court has recently reiterated that "[t]here is no cause of action . . . labeled unjust enrichment." *Stapleton v. JPMorgan Chase Bank, N.A.*, 779 F. Supp. 3d 1059, 1075 (N.D. Cal. 2025) (Breyer, J.). But regardless of how Greene's equitable claim is characterized (as unjust enrichment or quasi-contract), he has failed to plead the required elements.

**Benefit**. Greene does not allege he conferred a benefit on Google because (again) his allegations are conclusory and untethered from concrete facts. Greene does not fix this issue in his Opposition. He merely recites Google's total "profits," which he asserts must be due in part to the success of NotebookLM," and thus (by extension) his voice. Opp. at 14. He does not provide any factual basis for this causal chain, nor his assertion that Greene's voice "driv[es]" *NotebookLM's* "growth." Opp. at 14. And he again fails to account for alternative explanations for *NotebookLM's* success, including its "breakthrough" technology. Mot. at 14. This is insufficient. *See Vaughan v. Quicken Loans, Inc.*, 2025 WL 2104273, at *6 (C.D. Cal. July 8,

14

2025) (dismissing quasi contract claim where plaintiff failed to adequately allege benefit).

**Unjust retention**. Greene has also not pleaded unjust retention. As Greene's own case, *Astiana*, makes clear, for retention to be "unjust," Greene must allege that the benefit was conferred through qualifying conduct, such as fraud or coercion. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (plaintiff alleged defendant had "'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling"). "[W]hen a plaintiff fails to sufficiently plead an actionable misrepresentation or omission, his [or her] restitution claim must be dismissed." *Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022) (dismissing quasi contract claim based on alleged collection of personal data). Greene claims unjust retention because another company (Speechify) has started licensing with public figures, which he asserts indicates that Greene's voice was a "marketable asset." Opp. at 14. This argument speaks only to benefit and thus does not plead the "misrepresentation or omission," *id.*, "fraud or coercion," *Astiana*, 784 F.3d at 762, required by *Hammerling* and *Astiana*.

**D.    Greene has not shown Alphabet Inc. is a proper defendant.**

Greene claims Alphabet Inc. is a proper defendant because he alleges that "Alphabet 'wholly owns and *controls*' [] Google and YouTube, that they operate as a unified entity," that "Google is the alter ego and agent of Alphabet," and that the companies share a CEO. Opp. at 15.

Aside from the CEO claim, each one of these allegations is a legal conclusion and cannot form the basis of a plausible pleading. As for the CEO allegation, Greene's own case (*Bestfoods*) emphasizes that parent companies are ordinarily *not liable* for their subsidiaries' acts, and that mere management or ownership is not sufficient to confer such liability. *See U.S. v. Bestfoods*, 524 U.S. 51, 61-63 (1998). The existence of overlapping directors or executive officers is one of several factors courts consider when applying the alter ego doctrine and is not dispositive. *Id.* at 62; *see also*, Mot. at 14 (citing cases dismissing Alphabet).

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's claims should be dismissed.

15

REPLY ISO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
Case No. 3:26-cv-01773-CRB

6204281

Dated: May 15, 2026                                        KEKER, VAN NEST & PETERS LLP


                                                By:    */s/ Eleanor F. Brock*
                                                        MICHELLE YBARRA
                                                        SARAH SALOMON
                                                        SANA A. SINGH
                                                        ELEANOR F. BROCK
                                                        YEGINA WHANG

                                                        Attorneys for Defendants
                                                        GOOGLE LLC and ALPHABET INC.

16

6204281