**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (Bar No. 236165)
mmao@bsfllp.com
Joshua Michelangelo Stein (Bar No. 298856)
jstein@bsfllp.com
Jake A. Glendenning, (Bar No. 345463)
jglendenning@bsfllp.com
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899

Amy Ren[1]
aren@bsfllp.com
55 Hudson Yards,
New York, NY 10001

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID L. GREENE<br><br>            Plaintiff,<br><br>    v.<br><br>GOOGLE LLC, and ALPHABET INC.,<br><br>            Defendants. | Case No. 3:26-cv-01773-CRB<br><br>**PLAINTIFF DAVID L. GREENE'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Date:          June 12, 2026<br>Time:         10:00 a.m.<br>Dept:         Courtroom 6 – 17th Floor<br>Judge:        Hon. Charles R. Breyer<br><br>Complaint Filed:          January 23, 2026<br><br>Action Removed:          March 2, 2026<br><br>**DEMAND FOR JURY TRIAL** |

---

[1] Not admitted in California. Motion for admission *pro hac vice* forthcoming if this action remains in federal court.

**TABLE OF CONTENTS**

I.   Legal Standard ................................................................................................1

II.  Defendants fail to meet their burden to establish preemption under
     the Ninth Circuit's two-part test ...................................................................2

     A.   Mr. Greene's claims do not fall within the subject matter of copyright .............2

          1.   Mr. Green's allegations raise right-of-publicity claims and
               not copyright claims...............................................................3

          2.   Mr. Greene's claims are publicity claims. .............................................5

          3.   Mr. Greene does not plead elements of a copyright claim....................11

     B.   Mr. Greene's claims require extra elements that defeat
          complete premption..............................................................................13

III. Conclusion ....................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*AGK Sierra De Montserrat, L.P. v. Comerica Bank*,
   109 F.4th 1132 (9th Cir. 2024) ................................................................................ 8

*Ah Quin v. Cnty. of Kauai Dep't of Transp.*,
   733 F.3d 267 (9th Cir. 2013) ........................................................................... 11, 12

*Brown v. AmerisourceBergen Corp.* No. CIV S-08-1245 GGH,
   2008 WL 11388124 (E.D. Cal. Nov. 19, 2008) ................................................... 10

*Caterpillar, Inc. v. Williams*,
   482 U.S. 386 (1987) .......................................................................................... 1, 12

*Cnty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ................................................................................. 1

*Daniher v. Pixar Animation Studios*,
   2022 WL 1470480 (N.D. Cal. May 10, 2022) ............................................... 11, 12

*Dead Kennedys v. Biafra*,
   37 F. Supp. 2d 1151 (N.D. Cal. 1999) ................................................................ 12

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ....................................................................... *passim*

*Faulk v. JELD-WEN, Inc.*,
   159 F.4th 618 (9th Cir. 2025) ....................................................................... 12, 15

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................................. 5

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996) .............................................................................. 8

*Fox v. DriveTime Auto. Grp. Inc.*,
   2025 WL 1949504 (D. Ariz. July 16, 2025) ........................................................ 3

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) ............................................................................... 2

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
   761 F.3d 1027 (9th Cir. 2014) ....................................................................... 2, 10

*Hunter v. Philip Morris USA*,
   582 F.3d 1039 (9th Cir. 2009) .................................................................... 2, 3, 15

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010) ......................................................... 8, 11, 13, 14

*KNB Enters. v. Matthews*,
   78 Cal. App. 4th 362 (2000) ..................................................................... 5, 7, 13

ii

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006)................................................................................... 9, 13

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017)................................................................................... 5, 13

*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988)................................................................................. 4, 6, 9

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011).......................................................................................... 11

*No Doubt v. Activision Publ'g, Inc.*,
    702 F. Supp. 2d 1139 (C.D. Cal. 2010).................................................................. 2, 5, 11

*O'Brien v. PopSugar Inc.*,
    2019 WL 462973 (N.D. Cal. Feb. 6, 2019)............................................................. 5, 7, 11

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) ...................................................................................................... 12

*Timed Out, LLC v. Youabian, Inc.*,
    229 Cal. App. 4th 1001 (2014)........................................................................................ 5

*Waits v. Frito–Lay, Inc.*,
    978 F.2d 1093 (9th Cir.1992)........................................................................................ 10

*White v. Samsung Electronics America, Inc.*,
    971 F.2d 1395 (9th Cir. 1992)......................................................................................... 7

*Wilson v. Rutherford*,
    2022 WL 3275312 (C.D. Cal. Aug. 11, 2022)................................................................. 3

Wimer v. Reach Out Worldwide, Inc.,
    2017 WL 5635461 (C.D. Cal. July 13, 2017) ............................................................... 12

*Young v. NeoCortext, Inc.*,
    690 F. Supp. 3d 1091 (C. D. Cal. 2023)........................................................................... 5

**Statutes**

17 U.S.C. § 103 ........................................................................................................... 9, 11

17 U.S.C. § 102 ........................................................................................................... 9, 11

28 U.S.C. § 1447 ............................................................................................................... 2

California Civil Code § 3344 ................................................................................... 4, 6, 7

**Treatises**

1 Nimmer on Copyright § 1.01 (1999) ......................................................................... 6, 15

McCarthy, *Rights of Publicity and Privacy* § 11.13 (1997)............................................... 6

iii

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

The newfangled technology at issue does not change that David Greene's case is a classic right of publicity suit, a suit that should have remained in state court. Indeed, the Court lacks subject matter jurisdiction; Mr. Greene did not and does not bring a copyright suit. He instead alleges that Defendants misappropriated his "persona to market and sell its AI product and subscription access." Dkt. 1-3 ("Complaint") Ct. I ¶ 4. And he alleges, "[t]he voice of the male AI host was (and still is) unquestionably Mr. Greene's voice." *Id.* ¶ 61.

Such allegations can only support removal if the removing party can show "complete preemption" by copyright. But as the Ninth Circuit recognized in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), publicity claims cannot be preempted when their subject matter is one's identity or persona, even when the means, mechanism, or medium for misappropriation involves copyrighted source materials. That same binding precedent makes clear that the "tort of misappropriation . . . protects a person's *persona.* A *persona* does not fall within the subject matter of copyright. Thus, . . . preemption does not apply." *Id.* at 1004 (emphasis in the original).

Seeking nonetheless to turn a narrow exception into the rule itself, Defendants invoke inapposite case law, case law that focuses on attempts to bring ersatz publicity claims in order to prevent the dissemintation of copyrighted works. This case, however, focuses on Mr. Grenee's voice, identity, and persona, which are neither copyrighted nor copyrightable. These publicity rights are the lifeblood of Mr. Greene's livelihood and the central (indeed only) thrust of his suit. This Court should remand Mr. Greene's case to state court where it belongs.

## I.    LEGAL STANDARD

The parties agree that the sole legal issue to decide whether to remand this case is whether Mr. Greene's suit is completely preempted, because "complete preemption" is an exception to the "well-pleaded complaint rule." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 748 (9th Cir. 2022); Dkt. 29 ("Opp.") at 1; Dkt. 1 ¶¶ 7, 11.[2] "[W]hen a defendant asserts

---

[2] The well-pleaded complaint rule normally "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

1

that a claim is completely preempted, examination of extra-pleading material is permitted." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1035 (9th Cir. 2014). There is a "strong presumption" against removal jurisdiction, and courts "strictly construe the removal statute against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). This "means that the defendant always has the burden of establishing that removal is proper." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted). The "court resolves all ambiguity in favor of remand to state court." *Id.*[3]

## II.    Defendants fail to meet their burden to establish preemption under the Ninth Circuit's two-part test.

"Both prongs of" the Ninth Circuit's preemption "test must be satisfied in order for the state-law claim to be preempted." *No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1143 (C.D. Cal. 2010)).[4]

### A.  Mr. Greene's claims do not fall within the subject matter of copyright.

Defendants ignore dozens of paragraphs specifically detailing how they misappropriated Mr. Greene's voice, identity, and persona, and cherry-pick six sentences containing words that are sometimes used in copyright cases to argue that Mr. Greene's claims fall within the subject matter of copyright. These words include, among similarly general words, "copies," "creative expression," "downloaded," "performance," and "derived from." Opp. at 7–8. When read in context, the Complaint as a whole unambiguously brings publicity misappropriation claims, and even if it is ambiguous, the "court resolves all ambiguity in favor

---

[3] Defendants summarize discovery conversations between the parties to imply that Mr. Greene should have filed his motion to remand earlier. There is no deadline to remand a case for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Further, Defendants' out of context quotation of the discovery letter is misleading. Mr. Greene argued that early discovery would help resolve the factual dispute that Defendants introduced by determining whether Defendants designed *NotebookLM* to sound like Mr. Greene, thereby implicating his publicity rights, or as Defendants' argue, whether they created *NotebookLM* solely by copying copyrighted information without designing it to sound like Mr. Greene's voice. *See* Dkt. 29-2, Ex. D. Mr. Greene did not, as Defendants allege, "argue[] that early 'jurisdictional discovery' would confirm, among other things, whether Defendants 'infringed his copyright.'" Opp. at 3 n.3 (emphasis in opposition brief).

[4] Defendants repeatedly argue that Mr. Greene's claims "sound in copyright" (*e.g.,* Opp. at 1, 3 n.3, 12) but the Ninth Circuit test is much more specific.

2

of remand to state court." *Hunter*, 582 F.3d at 1039; *see also Wilson v. Rutherford*, 2022 WL 3275312, at \*3, 5 (C.D. Cal. Aug. 11, 2022) (granting motion to remand where Defendant "failed to carry his burden in establishing federal subject-matter jurisdiction" under copyright "complete preemption" doctrine.).

### 1. Mr. Greene's allegations raise right-of-publicity claims and not copyright claims.

Defendants accuse Mr. Greene of "refus[ing] to engage" with the allegations in his Complaint in which he mentions recordings. As Mr. Greene previously explained multiple times, the Complaint discusses Defendants' training process and use of voice recordings to detail the means by which Defendants designed their product to misappropriate his voice and identity; not to raise copyright claims. *See* Dkt. 28 at 2; Dkt. 23 ("Mot.") at 6. Mr. Greene's alleged harms arise not from copyright infringement, but from Defendants' commercial use of his voice and identity. Mr. Greene specifically alleges that without "his consent," Defendants "sought to replicate Mr. Greene's distinctive voice—a voice made iconic over decades of decorated radio and public commentary—to create synthetic audio products that mimic his delivery, cadence, and persona." Complaint ¶ 3. Mr. Greene alleges Defendants' product, "NotebookLM allows [] users to create podcasts with Mr. Greene's voice, manner of delivery, and personality." *Id*. ¶ 4. The Complaint's focus is consistently on "Google's theft of Mr. Greene's voice," *id*. ¶ 8, and his related name, image, likeness, identity, and persona. *See id*. ¶¶ 1, 3, 6, 8, 10, 11, 16–20, 21, 35, 40, 42, 50, 51, 52, 54–69, 70–71, Ct. I ¶ 4, Ct. IV ¶ 2. Indeed, the Complaint alleges, "[t]he voice of the male AI host was (and still is) unquestionably Mr. Greene's voice." Ct. ¶ 61. It never mentions, and Defendants cannot point to, any allegations of copyright ownership, infringement, or the exclusive rights outlined by the Copyright Act, and never brings a cause of action for a copyright claim. *See Fox v. DriveTime Auto. Grp. Inc.*, 2025 WL 1949504, \*2, 3 (D. Ariz. July 16, 2025) ("resolv[ing] the ambiguity in favor of remand" where "the Complaint itself mentions the [federal cause of action] once, without discussing [its] elements . . . or applying facts pleaded in the Complaint to those elements" and plaintiff otherwise, as "master of the complaint . . . rel[ied] exclusively on state law").

PLAINTIFF'S REPLY ISO MOTION TO REMAND; CASE NO. 3:26-cv-01773-CRB

Defendants cite the Complaint's first paragraph to argue that Mr. Greene alleges copyright infringement, but the opposite is true. He alleges "Google used Mr. Greene's voice without authorization and then used those stolen copies to develop, train, and refine its AI broadcasting product, *NotebookLM*." Complaint ¶ 1. In the immediately following paragraphs, the Complaint elaborates on how Defendants used *NotebookLM* to misappropriate Mr. Greene's publicity rights. "Without his consent, Google sought to replicate Mr. Greene's distinctive voice—a voice made iconic over decades of decorated radio and public commentary—to create synthetic audio products that mimic his delivery, cadence, and persona." *Id.* ¶ 3. Therefore, the Complaint alleges that Defendants used stolen copies to *effectuate* the misappropriation of his identity. He makes no allegations about the theft of copies by themselves, or separate from advancing the ultimate goal of impersonating or imitating Mr. Greene for Defendants' commercial benefit. Further, the language of the first paragraph alleges theft of Mr. Greene's "voice," which is protected under California's right-of-publicity statute, and not copyright law. *See* Cal. Civ. Code § 3344 (protecting "name, voice, signature, photograph, or likeness"); *see also Midler v. Ford Motor Co.*, 849 F.2d 460, 462–63 (9th Cir. 1988) ("A voice is not copyrightable. . . . What is put forward as protectible here is more personal than any work of authorship.").

Defendants' other out-of-context examples are similarly unavailing. They argue that his request for "permanent injunctive relief, including . . . the deletion of data acquired from or related to Mr. Greene and the immediate cessation of all products and services relying upon the same" also "sound[s] in copyright." Opp. at 13 (citing Complaint Prayer for Relief ¶ 7). This request is consistent with section 3344's injunction provision, which allows for "remov[al]" of the "voice." *See* Cal. Civ. Code § 3344(a)(2) ("a party may seek an injunction . . . require[ing] the respondent to remove, recall, or otherwise cease the publication or distribution of the petitioner's name, voice, signature, photograph, or likeness"). Defendants also cite allegations that they "trained" *NotebookLM*, "copied and/or otherwise imitated Mr. Greene's voice," used his voice as "inputs," copied his "performance," and made a competing product "derived from his works." Opp. at 7-8. These examples are all unavailing. The Complaint includes all of these

4

mentions to explain how Defendants' accomplished the "non-consensual use of" Mr. Greene's publicity rights. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017)*; see, e.g.,* Complaint ¶¶ 3, 16, 55, 68.[5] As in myriad other cases, because Mr. Greene "allege[s] the misappropriation of non-[copyrightable] elements of [his] likeness[] and identit[y]," even though his likeness and identity can be embodied in copyrightable works, Mr. Greene has "asserted rights that are not equivalent to the rights of copyright holders." *O'Brien v. PopSugar Inc.*, 2019 WL 462973, at *2–3 (N.D. Cal. Feb. 6, 2019) (finding no complete preemption despite allegations that defendant "misappropriated influencers' personas by *copying* likenesses, logos, and content" and displayed "text *copied* in proximity to Plaintiffs' *images*.") (citing *Downing*, 265 F.3d at 1004–05) (emphasis added to highlight copyright-adjacent language); *see also Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1013, (2014) (finding publicity claims not preempted by copyright law despite use of copyrighted material); *Young v. NeoCortext, Inc.*, 690 F. Supp. 3d 1091, 1101 (C. D. Cal. 2023), *aff'd*, 2024 WL 4987254 (9th Cir. Dec. 5, 2024) (same); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365, 374 (2000) (same); *No Doubt* 702 F. Supp. 2d at 1147 (same).

### 2.  Mr. Greene's claims are publicity claims.

The Ninth Circuit has consistently held for decades that when "the 'use' of a likeness forms the 'basis' of a publicity-right claim, the claim is not preempted" even when "names and likenesses are embodied in a copyrightable" form. *Maloney*, 853 F.3d at 1012 (citing *Downing*, 265 F.3d at 1000, 1004). When "the subject matter of the . . . statutory and common law right of publicity claims . . . are not copyrightable, the claims are not equivalent to the exclusive

---

[5] The same is true of Mr. Greene's claims regarding memorization. Defendants argue that Mr. Greene's alleges that *NotebookLM* outputs may contain memorized copies of his voice, and that somehow this allegation transforms his claim into a copyright claim. In their Motion to Dismiss reply brief, Defendants cite *complaints*, and not orders, to argue that memorization supports "copyright theories." Dkt. 30 at 3. Although *NotebookLM* may contain some memorized snippets of actual recordings, the Complaint consistently alleges that *NotebookLM* "imitate[s]" Mr. Greene. *E.g.,* Complaint ¶¶ 16, 35. To the extent the outputs contain some memorized snippets of Mr. Greene's voice, they are likely not copyrightable due to lacking the requisite "minimal level of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991). And even if they are copyrightable, they are no different from the copyrighted photograph in *Downing* that nonetheless misappropriated the plaintiffs' publicity rights.

rights contained in § 106." *Downing*, 265 F.3d at 1005. In *Downing*, a clothing retailer purchased a photograph of appellant surfers from a photographer, who owned the copyright. *Id.* at 1000. The retailer published the photo in its catalogue without the plaintiffs' permission. *Id.* The Court reasoned that while the photograph falls within copyright subject matter, "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [the] claims, but rather, it is the use of the Appellants' likenesses and their names pictured in the published photograph." *Id.* at 1003. It held the subject matter of a right to publicity claim is "the very identity or persona of the plaintiff as a human being." *Id.* at 1004 (citing McCarthy, *Rights of Publicity and Privacy* § 11.13[C] at 11–72–73 (1997)). The subject matter of a right to publicity claim "does not become a work of authorship simply because it is embodied in a copyrightable work[.]" *Id.* at 1003–04 (quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1–23 (1999).

Defendants try to distinguish *Downing* by arguing that the photograph at issue in that case was published "in connection with an advertising campaign, identifying the plaintiffs by name, and offering" the shirt with their images for sale. Opp. at 11. Mr. Greene, however, similarly alleges that Defendants used Mr. Greene's voice and other publicity rights to sell their product. Ct. I ¶ 3 ("Google used Mr. Greene's voice in and for advertising and sales promotion by configuring a Greene-like voice as a default selling feature of *NotebookLM*, using the same inproduct demos and promotional blog posts, and integrating the same hosts into commercial partnerships like Spotify Wrapped"); *see also* ¶¶ 4, 46. Further, it makes no difference that Mr. Greene alleges "voice" and "identity" misappropriation instead of "name" and "likeness" misappropriation. Section 3344 protects one's right to their "voice" as well as one's "name" and "likeness." *See* Cal. Civ Code 3344. All of these protected rights are elements of one's "*persona* [which] does not fall within the subject matter of copyright. *Downing*, 265 F.3d at 1004. And common law protects one's identity. *See Midler*, 849 F.2d at 462–63 (in which Ford likewise did not use Midler's name in their advertising campaign). Moreover, under California law, "the right of publicity does not require that appropriations of identity be accomplished through particular means to be actionable." *White v. Samsung Electronics America, Inc.*, 971

6

F.2d 1395, 1398 (9th Cir. 1992). "It is not important *how* defendant has appropriated plaintiff's identity, but *whether* defendant has done so."[6] *Id.* (emphasis in original).

Mr. Greene, therefore, raises a textbook right-of-publicity claim even though some of the asserted publicity rights were embodied in a copyrightable medium, because his publicity rights form the "basis" of the claim.[7] *O'Brien*, 2019 WL 462973 at *2–4 (remanding for lack of "complete preemption" because it was "not the publication of the photograph itself, as a creative work of authorship, that is the basis for" the claims, and although the "allegations in part involve[d] the misappropriation of photographs, those photographs are not the exclusive subject of Plaintiffs' right of publicity claim"); *see, e.g.,* Complaint ¶ 19 (Defendants "not only unlawfully appropriated a recognizable voice and persona, but also packaged and commercialized that persona into an endlessly reusable consumer product, normalizing and incentivizing the unauthorized replication of individuals' identities.").

Defendants disagree, apparently because they misread two cases, *Fleet* and *Laws.* Both of these cases establish that a right-of-publicity claim is preempted by copyright law when the plaintiff tries to use publicity law to prevent the holder of a valid copyright from exercising that copyright. Defendants again cite *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1915 (1996) still not quite grappling with its express "limit[ation]" by the California Court of Appeal panel "to the unique facts of that case" four years later. *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 374 (2000). The Court of Appeal held, "that because a human likeness is not copyrightable, even if captured in a copyrighted photograph, the [] section 3344 claims against the unauthorized publisher of their photographs are not the equivalent of a copyright infringement claim and are not preempted by federal copyright law." *Id*. at 365. *Fleet* stands only for the "proposition that performers in a copyrighted film may not use their statutory right of publicity

---

[6] Defendants attempt to distinguish *O'Brien* for the same reason as *Downing*, Opp. at 11. Name and likeness publicity rights are no different from the Mr. Greene's voice publicity right.

[7] Defendants attack a straw person, arguing that "none of the cases Greene cites establish a per se rule exempting voice misappropriation claims from copyright preemption." Opp. at 9. Mr. Greene never argued for such a per se rule, and openly admitted in the opening paragraph to his "Argument" section that "courts have found that publicity right claims can, in some rare cases, be preempted by the Copyright Act." Mot. at 3.

to prevent the exclusive copyright holder from distributing the film." *Id.* at 372. The Court of Appeal "distinguish[ed]" *Fleet* because it did not involve plaintiffs "asserting a right of publicity claim against the exclusive copyright holder in an effort to halt the authorized distribution of their photographs." *Id.* at 372.

Defendants argue that "the Ninth Circuit disavowed *KNB*'s holding,"[8] because the Ninth Circuit stated it "do[es] not read *Fleet* . . . so narrowly." Opp. at 11–12 n.14 (citing *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154 (9th Cir. 2010). They misconstrue the Ninth Circuit. When saying it does "not read *Fleet* . . . so narrowly," it refers to the district court's extremely narrow reading of *Fleet* and *KNB*, as applied to the facts in that case, and not to *KNB's* reading of *Fleet*. In *Jules Jordan¸* the district court read *Fleet* and *KNB* narrowly to hold that there was no preemption simply because "defendants had no legal right to distribute the DVDs" at issue. *Id.* at 1154. In other words, it distinguished its case from *Fleet* based on the part of *KNB's* holding that focused on whether the defendant held a valid copyright. The Ninth Circuit held that this reading was too narrow because it focused only on the distribution rights of the allegedly infringing defendant, and not "*whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright.*" *Id.* at 1154–55 (emphasis added). The court overturned the district court, holding that the "essence of [plaintiff's] claim is that the [] defendants reproduced and distributed the DVDs without authorization" because the plaintiff's asserted "rights are works of authorship fixed in a tangible medium of expression and come within the subject matter of the Copyright Act." *Id.* at 1155. The Court held that the plaintiff asserted no publicity rights beyond "the unauthorized reproduction of his performance on the [copyrighted] DVDs." *Id.* at 1154. Therefore, *Jules Jordan*, like every other case on point, holds that a plaintiff may not side-step copyright law by bringing a right-of-publicity claim to stop the distribution of a work subject to copyright law.

---

[8] As a general matter, the Ninth Circuit cannot "disavow" binding California Court of Appeal authority. "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024).

Unlike *Jules Jordan*, but like *Downing*, Mr. Greene alleges several right-of-publicity claims that go beyond "the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *See Id.* at 1153; *see, e.g., supra* Part II.A.1; Complaint ¶¶ 3, 61 (Defendants "sought to replicate Mr. Greene's distinctive voice—a voice made iconic over decades of decorated radio and public commentary—to create synthetic audio products that mimic his delivery, cadence, and persona," and "[t]he voice of the male AI host was (and still is) unquestionably Mr. Greene's voice."); *see Midler v. Ford Motor Co.*, 849 F.2d 460, 462–63 (9th Cir. 1988) ("A voice is not copyrightable. . . . What is put forward as protectible here is more personal than any work of authorship.").

*Laws* should be read the same as *Fleet*. In that case, plaintiff Laws, a performing artist, entered into a recording agreement with a record label, in which she granted the label the exclusive right to copyright the recordings, and the exclusive right to lease the recordings. *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1146 (9th Cir. 2006). Pursuant to the agreement, Laws recorded the song "Very Special" and the label retained the copyright in the recording. *Id.* Over twenty years later, Sony, the defendant, obtained a license to sample "Very Special" in a Jennifer Lopez song. *Id.* Laws filed a complaint against Sony alleging that Sony's use of her song violated her rights to her statutory and common law publicity rights, despite the fact that Sony had a valid license to the song's copyrights. *Id.* Critically, the Court held that in "contrast to *Midler* and *Waits,* where the licensing party obtained only a license to the song and then imitated the artist's voice, here Sony obtained a license to use Laws's recording itself." *Id.* at 1140–01. This holding frames the context for the language Defendants cite, that claims are preempted when "the entirety of the allegedly misappropriated vocal performance [was] contained within a copyrighted medium." *See* Opp. at 10. Here, unlike *Laws*, the misappropriation lies not in the distribution of a single vocal recording, but in *NotebookLM's* imitation of Mr. Greene, which is not based on any specific vocal sample or performance.

*Laws* also analyzed *Waits*, where the Ninth Circuit "held that the claim was not preempted by copyright law because it was 'for infringement of voice, not for infringement of a copyrightable subject such as sound recording or musical composition.'" *Id.* at 1140 (citing

PLAINTIFF'S REPLY ISO MOTION TO REMAND; CASE NO. 3:26-cv-01773-CRB

*Waits v. Frito–Lay, Inc.*, 978 F.2d 1093 (9th Cir.1992). Defendants concede that the court "distinguished *Midler* and *Waits* where the challenged conduct concerned the hiring of a voice actor to imitate the plaintiff's voice." Opp. at 10. This case is like those cases because it alleges that Defendants imitate Mr. Greene. Whether they hired a sound-alike *actor* to create vocal replicas is not relevant. What is, is that Mr. Greene alleges that *NotebookLM* imitated *hi*s "distinctive and widely known" voice. *Waits* 978 F.2d at 1100; Complaint ¶ 3 ("Google sought to replicate Mr. Greene's distinctive voice—a voice made iconic over decades of decorated radio and public commentary"); ¶ 11 ("the male AI host voice was engineered to imitate Mr. Greene's distinctive voice"); *see also id.* ¶¶, 49–51 (describing his "unique" voice). Of course, Defendants admitted that they hired a voice actor as well, making this an open-and-shut *Midler* identity case. Dkt. 15-3 at 5; 24-1 at 5; Dkt 29-1 ¶ 2.[9]

Ultimately, *Laws* and *Fleet* stand for the proposition that a plaintiff may not use publicity law to make an end-run around copyright law by using right-of-publicity claims to stop the distribution of a *specific* copyrighted work. Here, unlike *Laws* or *Fleet*, Mr. Greene is not suing to prevent the use of a single specific copyrighted recording to which they hold a valid license. He is suing to stop conduct that "directly violates Mr. Greene's right of publicity by creating a digital replica of his identity, his distinctive voice, and turn[s] it into a reusable asset[.]" Complaint ¶ 71. This case is therefore akin to *Downing*, where the defendant commercially exploited a likeness by using a copyrighted photograph as a vehicle for the right-of-publicity misappropriation. This case supports preemption even less than *Downing*, however, because the vehicle for misappropriation, *NotebookLM*, is not copyrightable, whereas the photograph in *Downing* was itself copyrightable. Maybe Defendants used potentially copyrightable recordings to create or train it. But here, as in *Downing*, "it is not the publication

---

[9] "[W]hen a defendant asserts that a claim is completely preempted, examination of extra-pleading material is permitted." *Hawaii ex rel. Louie*, 761 F.3d at 1035; *see also Brown v. AmerisourceBergen Corp.* No. CIV S-08-1245 GGH, 2008 WL 11388124, at *2 (E.D. Cal. Nov. 19, 2008) ("In this case, further evidence is needed to determine if there is complete preemption. Because both parties . . . did not submit evidence in support of their position, they will now be given the opportunity to produce any such evidence."). Here, there are disputed facts supporting such an examination. *See supra* n.5.

10

of the . . . creative work of authorship, that is the basis for [the] claims, but rather, it is the use of the [statutory protected publicity rights] in the" copyrighted work. *Downing*, 265 F.3d at 1003; s*ee also O'Brien.,* 2019 WL 462973 at *4 (remanding for lack of complete preemption); *No Doubt*, 702 F. Supp. 2d at 1147 (same).

### 3. Mr. Greene does not plead elements of a copyright claim.

Defendants argue that the relevant question is "not whether a work is protected by copyright, but rather whether it is the kind of work covered by the Copyright Act." Opp. at 9 (citing *Daniher v. Pixar Animation Studios*, 2022 WL 1470480, *5 (N.D. Cal. May 10, 2022). To determine whether a work is the kind covered by the Copyright Act, courts look to whether they fall within "the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *See Jules Jordan*, 617 F.3d  at 1153. Further, "the scope of copyright subject matter does not extend to ideas that are not within a fixed medium." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011). Here, the works at issue are not the kind covered by the Copyright Act because Mr. Greene alleges *NotebookLM* replicates and imitates his iconic voice, persona, and identity, and such imitations are not within a fixed medium. *See, e.g.,* Complaint ¶¶ 16, 35, 40, 61. Second, even if Mr. Greene's claims were limited to claims that the *NotebookLM*  model itself is a copy of his recordings, and not his "unique vocal qualities" "persona," "identity," or "style" (Complaint ¶¶ 4, 6, 19, 61, 65-68), Defendants contradict themselves. They have argued in another case that "allegations that a generative AI model is, itself, an infringing copy or derivative of the works on which it was trained do not suffice to state an infringement claim." Case No. 5:24-cv-02531-EJD, Dkt. 24 at 12.[10] They should be estopped from essentially

[10] Mr. Greene requests that the Court use its discretion to estop Defendants from raising their contradictory argument here, "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). Judicial estoppel is proper because Defendants' "later position [is] 'clearly inconsistent' with its earlier position . . . , [and Defendants] succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* In addition to their argument above that models cannot be copies or derivative works, Defendants previously succeeded by arguing in their prior case that the plaintiff "has not plausibly alleged that [Defendants' model,] Bard is an infringing derivative work." Case 3:23-cv-03440-AMO, Dkt. 20 at 24. The plaintiffs

PLAINTIFF'S REPLY ISO MOTION TO REMAND; CASE NO. 3:26-cv-01773-CRB

arguing the opposite here. At minimum, Defendants' attempt to box Mr. Greene into allegations that they have argued "do not suffice" to state a copyright cliam should not be credited.

And even if the works Defendants consulted in order to imitate Mr. Greene were the kind covered by copyright, the Complaint does not allege they are. Defendants concede that Mr. Greene, as "master[] of the complaint, chose not to do so." Mot. at 14 (citing *Caterpillar Inc.*, 482 U.S. at 395); *see also Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 623 (9th Cir. 2025) ("Because the plaintiff is the master of the complaint, she gets to determine which substantive claims to bring against which defendants. And in so doing, she can establish—or not—the basis for a federal court's subject-matter jurisdiction.") (cleaned up). This case is not like *Daniher*, where the court denied remand when the plaintiff "cancelled her copyright registration after the parties agreed that she did not have a federal copyright claim." 2022 WL 1470480, at *4. This case is much more like *Dead Kennedys v. Biafra*, where "the two state claims most likely to run afoul of complete preemption [were] pled them in terms that avoid preemption." 37 F. Supp. 2d 1151, 1154 (N.D. Cal. 1999).[11] Defendants argue that this case is distinguishable because it involved remedies not provided by the Copyright Act, but they do not indicate why remedies are important. Opp. at 9 n.10. To the extent they matter, Mr. Greene requests remedies under his rights of publicity, the Unfair Competition Law, and Quasi-Contract / Unjust Enrichment. *See* Complaint Ct.s I-IV. *See also* Dkt. 15-1 ¶ 3; 15-9 at 2, 4 (in which Mr. Greene's counsel clarified that Mr. Greene brings no copyright claim, and provided supporting authority).

---

in that case later dropped that pleading. *See* 3:23-cv-03440-AMO, Dkt. 28-1 at 109, 123 (amended complaint redline showing dropped derivative work claims). Defendants are "seeking to assert an inconsistent position [and] would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Ah Quin*, 733 F.3d at 270.

[11] This case is also like *Wimer v. Reach Out Worldwide, Inc.*, where the court held that because "neither the Complaint nor the current record" showed that the plaintiff had "preregistered or registered a copyright claim, it [was] doubtful at best that Plaintiff could even raise a copyright infringement claim to confer federal question jurisdiction." 2017 WL 5635461, at *2 (C.D. Cal. July 13, 2017). Defendants raise several inconsequential distinctions between this case and *Wimer*, and argue that it ignored Supreme Court authority. Opp. at 9. The authority Defendants cite, however, is irrelevant. It merely held that courts have jurisdiction to certify classes that include authors that have not registered their copyrights. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 159–60, 166–68 (2010). *Wimer* stands simply for the proposition that a court looks to the lack of copyright pleadings in a complaint to determine that it does not raise a copyright claim, regardless of whether it effects statutory standing or subject-matter jurisdiction.

12

**B.  Mr. Greene's claims require extra elements that defeat complete preemption.**

**Right of Publicity.** Defendants seem to argue that the copyright preemption test should be whether the complaint *references* conduct that *may* involve copyrightable material. But that is not the test. Rather, courts ask whether the state-law protects rights "qualitatively different" from copyright and contains an "extra element which changes the nature of the action." *Maloney*, 853 F.3d at 1019 (quoting *Laws*, 448 F.3d at 1143). Each of Mr. Greene's causes of action satisfies this governing test.

Voice and identity appropriation, and not reproduction or distribution, are the core allegations in the complaint. The Complaint alleges Defendants "sought to replicate" David Greene's "distinctive voice" to create synthetic audio that "mimic[s] his delivery, cadence, and persona," and that Defendants "deliberately made" the AI voice "so substantially similar" that "ordinary listeners reasonably believed the voice to be" David Greene. Complaint ¶¶ 3, 65. It pleads repeated public comparisons identifying the AI host voice as "eerily like" David Greene (Complaint ¶ 3), "actual confusion among users," (Complaint ¶ 66) and forensic analysis supporting the similarity between Mr. Greene's voice and the voice used in *NotebookLM*. Complaint ¶ 59. *Downing* is instructive, because even when "the photograph itself, as a pictorial work of authorship, is subject matter protected by the Copyright Act," the court still held that the state law publicity claims are not preempted by the Copyright Act when "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for Appellants' claims, but rather, it is the use of the Appellants' likenesses . . . ." *Downing*, 265 F.3d at 1003. Here, like the plaintiff's claims in *Downing*, it is the use of Mr. Greene's persona that is the basis of his claims, rather than the publication of copyrighted material itself.

Similarly, *KNB Enterprises* held that "human likeness is not copyrightable, even if captured in a copyrighted photograph," and therefore plaintiff's misappropriation claims "were not preempted by federal copyright law." 78 Cal. App. 4th at 365. Defendants claim that the Ninth Circuit "disavowed" *KNB*'s holding in *Jules Jordan Video, Inc.*, 617 F.3d, Opp. at 11 n. 14, but *Jules Jordan Video* only held "[i]f a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted." 617 F.3d at 1155.

And in *Jules Jordan Video*, the plaintiff asserted no publicity rights beyond "the unauthorized reproduction of his performance on the [copyrighted] DVDs." *Id.* at 1154.

Defendants further argue that the only facts "that are separate from the use of recordings" are that NotebookLM allegedly uses "uhms," "aahs," and "other human-sounding crutch words." Opp. at 13. That argument is flawed. First, the complaint alleges many facts separate from the use of recordings, including that Defendants extract text in addition to recordings, extract creative expression from text and recording data, and use other methods, including pre-train[ing] and fine-tun[ing] to refine the models. *See*, *e.g.,* Complaint ¶ 12 ("an LLM is 'trained' by copying a massive corpus of text and media and extracting both the facts and the creative expression of these ideas, sounds, and depictions from the data."). Second, the Complaint never alleges that Defendants used only recordings of Mr. Greene. Defendants seem to argue that Mr. Greene raises a copyright claim by pleading recordings of him *and others* are being infringed which is not what the Complaint does. Finally, Defendants' argument that those are "generic filler words" misses the point—individual words are rarely distinctive to a speaker—but their combination, cadence, tone, pitch, and delivery can be, and exactly what is alleged. Complaint ¶¶ 65-66.

**UCL.** Defendants generally argue that Mr. Greene's UCL claims are preempted for the same reasons as his publicity rights claims because they are based "on the same conduct as his publicity rights claims." Opp. at 13. They also argue, however that, "at a minimum," the UCL claim "rests at least in part" on copyright infringement. Opp. at 14. They mischaracterize the pleadings, but concede that Mr. Greene's claims turn "on unfairness, deception, and misleading advertising stemming from Defendants' exploitation of Mr. Greene's voice, likeness, and identity, which are separate elements from copying" and that "Mr. Greene's claim turns on Defendants' 'statements' rather than their training on data itself and takes issue with the imitation of Mr. Greene's 'voice,' rather than the appropriation of any particular fixed works. Mot. at 11. (quoting Complaint Ct. II ¶ 11). Defendants argue that *NotebookLM's* ability to potentially regurgitate sound recordings transforms this action into a copyright action. Opp. at 14. Even if such regurgitation takes place, and is substantial enough to infringe copyrightable

14

expression, it is no different from the image in the *Downing* that was used to misappropriate the plaintiffs' images to promote defendant's clothing. *See Downing*, 265 F.3d at 1003. Even if Defendants attempt to reframe the "how" (training inputs/outputs) in copyright terms, the "what" is identity-based deception and unfair competitive conduct tied to misappropriation of a persona rights, which are "qualitatively different" from § 106 rights. *See Faulk*, 159 F.4th at 623 ("Because the plaintiff is the master of the complaint, []he gets to determine which substantive claims to bring against which defendants") (cleaned up).

**Unjust Enrichment.** Defendants' equivalency theory also fails as to unjust enrichment. The Complaint alleges Defendants "received a benefit" by "appropriating and exploiting the commercial value of Mr. Greene's distinctive voice and persona to develop, promote, and sell NotebookLM access," and "unjustly retained this benefit." Complaint Ct. IV ¶¶ 2–3; *see also* ¶¶ 6, 8. That benefit is not the benefit protected by copyright; it is the commercial value of Mr. Greene's identity and goodwill.

## III.    CONCLUSION

Defendants cite no authority in which a court finds right-of-publicity claims completely preempted by copyright law. This is for good reason. Ordinary copyright preemption is a narrow doctrine because a right-of-publicity claim "does not become a work of authorship simply because it is embodied in a copyrightable work[.]" *Downing*, 265 F.3d 1003–04 (quoting 1 Nimmer on Copyright § 1.01[B][1][c] (1999)). "Complete preemption" is even narrower because the "court resolves all ambiguity in favor of remand to state court." *Hunter*, 582 F.3d at 1042. Defendants ask repeatedly for the Court to resolve ambiguity in their favor, but they have not met their burden. *See id*.

To hold otherwise would invite a complete revision of preemption law. It would also help usher in a dystopic world in which AI can coopt people's voices and identities with impunity, all because the underlying technology may rely on a corpus of copyrighted works, works ostensibly taken without compensation. In Defendants' world, two wrongs make a right. That is not and cannot be the law or our future.

PLAINTIFF'S REPLY ISO MOTION TO REMAND; CASE NO. 3:26-cv-01773-CRB

Dated: May 20, 2026          Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Joshua Michelangelo Stein*
Joshua Michelangelo Stein

Mark C. Mao, CA Bar No.236165
mmao@bsfllp.com
Joshua Michelangelo Stein, CA Bar No.298856
jstein@bsfllp.com
Jake A. Glendenning, CA Bar No.345463
jglendenning@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899

Amy Ren[12]
aren@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards,
New York, NY 10001
Tel.: (212) 446 2369
Fax: (212) 446 2350

*Attorneys for Plaintiff*

---

[12] Not admitted in California. Motion for admission *pro hac vice* forthcoming if this action remains in federal court.

16